ESPELAND, Respondent, v. GREEN, Appellant

(54 N. W.2d 465)

(File No. 9277. Opinion filed July 30, 1952)

**Everett A. Bogue,** Vermillion, for Defendant and Appellant.

**Oscar G. Beck,** Alcester, **Stordahl, May & Boe,** Sioux Falls, for Plaintiff and Respondent.

LEEDOM, J. Plaintiff admittedly a "guest" in the automobile of defendant under the "guest statute", SDC 44.0362, obtained a judgment in circuit court for injuries received in

an automobile accident. Plaintiff's claim of "wilful and wanton misconduct" on the part of defendant is predicated on the premise that defendant deliberately transported plaintiff notwithstanding defendant suffered momentary periods of unconsciousness due to the malady "petit mal" and thereby knowingly exposed plaintiff to injury that would quite naturally follow an attack. Among other assignments of error defendant challenges the admissibility of certain evidence. We choose however to treat all the evidence admitted as proper, assuming without deciding its competency, and to resolve the case on the decisive issue of the sufficiency of such evidence to support the verdict. It is our opinion that the evidence considered most favorably from plaintiff's viewpoint together with all the inferences that may reasonably be drawn therefrom in support of plaintiff's cause of action fail to establish wilful and wanton misconduct on the part of defendant under the language of our statute as previously interpreted by this court and according to the standards laid down in prior decisions involving the statute. We therefore reverse the judgment entered by the circuit court.

The facts, stated most favorably to respondent, are substantially as follows:

Appellant, the owner and driver of the automobile was 74 years old at the time of the accident. He was driving a new 1950 Chevrolet automobile on a wide, graveled, country highway about 5:30 in the afternoon at a speed between 30 and 35 miles per hour. The day was clear and the road was dry. His passengers were his wife and the respondent who was a neighbor and friend of appellant and his wife. Appellant had made a trip from his farm home to another farm where his wife and respondent had spent the afternoon visiting to return the two women to their respective homes.

For about 15 years appellant had been suffering from spells of dizziness and momentary loss of consciousness of varying degrees of severity, none lasting more than an estimated two minutes. These spells were frequently referred to in the record as "black-outs". Over the long period of years they had occurred with increasing frequency to the point where those most severe occurred approximately once

a month. The black-outs came without warning and without fixed pattern as to time of day, time of week or time of month and left no ill effects noticeable to appellant. The mildest attacks could be experienced in the presence of other persons unaware that anything unusual was occurring to appellant. In the most severe attacks appellant fell to the ground.

Appellant had driven automobiles for many years and steadily through the 15-year period of his illness. He had never had an accident and never suffered a black-out while in or driving an automobile prior to the attack that caused the accident here involved. On the day of the accident he felt perfectly well and normal. He worried about driving a car and it often passed through his mind that someone might run into his car or that he might run into them, and on the day of the accident was aware of the fact that a black-out might overtake him. He drove his car carefully on the trip here involved and testified he then had no conscious realization that he probably would have an accident, and that he did not intend to have an accident.

Respondent admitted that appellant was a careful driver and never drove fast, that he kept on his own side of the road and never did anything in his driving to cause her to be frightened about riding with him. Respondent had no knowledge at the time of the accident of appellant's malady.

Appellant's illness had caused him to take precautions for his own safety and to avoid certain types of work such as climbing the windmill to grease the mechanism and driving a tractor. When he purchased the new Chevrolet he advised the salesman about his fainting spells and said he probably should not buy the car because he might wreck it. No doctor nor any other person had ever advised him not to drive an automobile.

As appellant proceeded on the trip on which the accident occurred he lapsed into unconsciousness without warning, his car gradually, and at first unnoticeably to the passengers, angled to the extreme right hand side of the road, struck a private drive embankment, bounded over it and came to rest partially on the highway and partially in the right hand ditch on the other side of the driveway. The

terrific jarring and jolting that resulted caused both appellant's wife and the respondent serious injury.

 This court has considered the sufficiency of evidence to establish wilful and wanton misconduct under this statute in the following cases: Melby v. Anderson, 64 S. D. 249, 266 N.W. 135; Martins v. Kueter, 65 S. D. 384, 274 N.W. 497; Granflaten v. Rohde, 66 S. D. 335, 283 N.W. 153; Elfert v. Witt, 73 S.D. 4, 38 N.W.2d 445; Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393; and Antonen v. Swanson, 74 S.D. 1, 48 N.W.2d 161. In the Melby case in whic hour guest statute was first interpreted the court recognized the purpose of the legislative enactment to relieve a driver or owner of an automobile from liability to a guest arising from ordinary negligence. In retrospect we regard the Melby decision sound and well considered. It established tests by which to determine the type of conduct that will render an automobile owner or driver liable to a guest for injury resulting from the operation of the automobile and has served as a dependable guidepost. Every decision rendered by this court involving the measure of such conduct has referred to and relied on the standards set up in the Melby opinion. We do not now propose to depart from those standards.

Recognizing the difficulty of meeting the requirements for liability specified in the Melby decision, counsel for respondent say in their brief "Although counsel for the Respondent is of the firm opinion that the conduct of the Defendant in driving his automobile under the circumstances and at the time and place in question, was of such a character that it constituted wilful and wanton misconduct as defined by all of the decisions of this Court, we are frank to admit that the language of this Court used in some of the earlier guest cases (Melby v. Anderson, Granflaten v. Rohde) has tended to cause some confusion among trial courts, juries and practicing attorneys in the practical application of the definitions contained therein." Counsel then refer to this language in the Melby opinion [64 S. D. 249, 266 N.W. 135, 137]: "To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should

not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability ( as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff." Counsel indicate that no exception is taken to this phraseology "if further clarification is and can be adopted to the end that a fixed standard may be established whereby such an intent or conscious realization on the part of any defendant may be determined." We share counsel's difficulty in the sense that we recognize the impossibility of stating in express language a formula for separating with mathematical precision ordinary negligence from wilful and wanton misconduct under all fact situations. We have failed to find however any language in any of the decisions or texts that is appreciably more accurate or helpful than that used in the Melby opinion to delineate the difficult line that must be drawn in this type of case.

We believe the point for which respondent's counsel contend, that is that the intent or state of mind of the driver at the time of the accident cannot justifiably be determined by his own statement, is established law. Other courts have called the proper method of determining the driver's intent the "external standard" . Under it the driver's mental attitude is established not by what he said nor even by what he may actually have thought, but rather by the attitude that an ordinarily prudent person would have had under all the attending circumstances. This rule is recognized in the Melby opinion, 266 N.W. 135, 137, under the third test stated by the court in this language: "(3) omission to use such care and diligence to avert the threatened danger when, **to the ordinary mind,** it must be apparent that the result is likely to prove disastrous to another."

The problem confronting us in this case is whether or not under the standards established in the Melby decision and as we have applied them in the subsequent opinions involving the guest statute the conduct of the appellant at the time of the accident was such that reasonable men could differ in their views as to whether or not the facts here present show appellant's conduct to have been wanton and wilful.

It is our view that the element of deliberate recklessness which differentiates ordinary actionable negligence from wilful and wanton misconduct is not to be found in this case. A review of the disposition made here of the earlier cases cited above leads to the conclusion that under the measures of conduct heretofore applied by this court this appellant's conduct was not wilful and wanton. See also Peterson v. Denevan, 8 Cir., 177 F.2d 411.

In the Granflaten case [66 S. D. 335, 283 N.W. 156] cited above we said with reference to finding wanton and wilful misconduct in a given fact situation: "we are aware of the danger of too much refinement in an attempt to draw the line too near to due care". In that decision the court re-affirmed language of the Melby opinion. Reversing the judgment for the plaintiff, the court said in distinguishing Martins v. Kueter, above, that in the latter "there was an element of an affirmatively reckless state of mind", thereby recognizing such reckless state of mind as an element of wanton and wilful misconduct. That is the element lacking in the case at bar as determined not necessarily by appellant's actual state of mind as evidenced by his own statements, but rather by the judgment of the reasonably prudent person based on all the proven facts and the inferences to be drawn therefrom.

In the Granflaten case the defendant after drinking intoxicating liquor persisted in driving at excessive speed and passing other automobiles on the level and on hills over the protests of his passengers. In setting aside the verdict rendered in favor of the plaintiff, we held that the defendant, when he deliberately subjected the plaintiff to the hazard created by his conduct, was not wilful and wanton in that he was not aware at the time that he was subjecting plaintiff to **probable** danger. Measured by the Granflaten facts appellant, in the case at bar, notwithstanding he deliberately transported respondent knowing of his susceptibility to black-outs, did not have the conscious realization (as determined by the external standard of the prudent person) that he was **probably** subjecting respondent to the injury that resulted.

The ultimate and decisive question in the case at bar

has to do with the degree of danger to which this appellant subjected respondent. We said in the Melby case and have reaffirmed it in every decision on the subject since then, the hazard must be so great that the injury will **probably** result and that liability does not exist if the injury may only **possibly** result. The standards which we set up in the Melby case are stated in all their essentials in somewhat different language in Restatement of the Law where it is said that liability under this type of statute "involves a high degree of probability that substantial harm will result". Restatement, Torts § 500, and S.N. We have boldfaced especially pertinent words in the following quotations from Restatement. In Comment a. under § 500 it is stated with reference to liability "It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result **must be great.**" Referring to the defendant it is stated in Comment c. "It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man **the highly dangerous character** of his conduct." In Comment g. it is pointed out that the reckless disregard of the safety of others necessarily present under our type of statute differs "from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves **a risk substantially greater in amount** than that which is necessary to make his conduct negligent." The most that the ordinary, reasonable man could say of the conduct of the appellant in the case at bar is that he intentionally did an act knowing that it contained a risk of harm to respondent. Reasonably prudent men cannot say that appellant was conscious or should have been conscious of the fact that his act in transporting respondent was of a highly dangerous character. Therefore appellant's conduct does not partake to an "appreciable extent * * * of the nature of a deliberate and intentional wrong" as required in the Melby opinion, and as a matter of law is not wanton and wilful under the statute. If we were to hold otherwise we would "draw the line too near to due care" and would almost certainly be opening a door leading to impossible con-

fusion and eventual disregard of the legislative intent back of this statute designed to give relief from liability for negligence.

In Antonen v. Swanson cited above we held that a defendant as a matter of law was not guilty of wanton and wilful misconduct under these facts: he did not feel well, felt groggy, tired and sick from a malaria condition, sang to keep himself awake shortly prior to the accident, and then after falling alseep or lapsing into a "subconscious state of mind" ran off the road, seriously injuring plaintiff. In support of that decision we relied on Michigan cases, among them Perkins v. Roberts, 272 Mich. 545, 262 N.W. 305, where the driver, falling asleep and causing the injury, had prior to the accident become drowsy to the extent that he stopped his car, refreshed himself by smoking a cigaret and then drove on. We believe that reasonable men must agree that the defendants in these two cases having had warnings of a present tendency to sleep, exposed their passengers to as much danger as did this appellant and are chargeable with as much if not more "conscious realization" of the hazard involved.

Counsel for respondent have argued that placing the burden upon a plaintiff of showing mens rea or a guilty mind is in effect the same as requiring a plaintiff to conform to the rules of procedure and evidence in a criminal action. This is essentially what we recognized the rule to be under the guest statute in the case of State v. Bates, 65 S. D. 105, 271 N.W. 765, 766. Referring to the guest statute the court there said: "It is our opinion that the conduct which the Legislature was there attempting to describe by use of the words 'gross, wilful and wanton' is the same conduct which, when brought before a jury in a criminal case under the statute here involved, is sufficient to give rise to the mens rea which, as we have said above, we believe to be necessary before a conviction might be sustained under this section". We reaffirm the soundness of the principle there expressed and add that it is our opinion if we remove the essential of the guilty mind in guest cases as it is determined by the external standard of the reasonably prudent person, and as it exists in the wilful exposure of a defendant to a

**probability** that harm will result, we would be destroying the line of demarcation between negligence cases and cases involving wilful and wanton misconduct.

We believe there is no clear case precedent for our fact situation. Respondent relies on State v. Gooze, 14 N.J. Super. 277, 81 A.2d 811, 813. Appellant seeks to distinguish it from the case at bar. In the Gooze case the conviction of the defendant was sustained under a statute making it a misdemeanor for any person to cause the death of another "by driving any vehicle carelessly and heedlessly in wilful and or wanton disregard of the rights or safety of others". The defendant in the case suffered from sudden attacks of dizziness or unconsciousness. He was treated by his doctor who on discharging him advised that he should not drive a car alone. About one year later without any recurrence of the ailment in the meantime, he had an attack and the accident followed. In some respects the case is analogous to the case at bar. In other respects it can be distinguished. The defendant there had been warned not to drive alone and did drive alone. The statute there involved was in the disjunctive, that is either wilful or wanton conduct made the defendant guilty, whereas our statute is in the conjunctive. In not following the New Jersey court in the Gooze case however we rely not so much on the distinguishing features between that case and the case at bar as on the proposition that measured by standards established by our own prior decisions and the well established rules of other courts governing liability under similar guest statutes, the facts in the instant case do not show wanton and wilful misconduct. We observe a fallacy in the reasoning of the New Jersey court where it states: "It was reasonably forseeable that if he 'blacked out' or became dizzy without warning, its probable consequences might well be injury or death to others". Certainly in the case at bar and also under the facts of the case in which the New Jersey court so reasoned, the question whether or not the black-out would occur was a most important factor in determining the probability of injurous consequences and the occurrence of the black-out therefore should not be treated as an assumed fact in measuring the

defendant's conduct. We note that one member of the New Jersey court dissented from the majority view.

 Since it is our view that reasonable men could not differ as to whether the conduct of the appellant conformed to the standard established by the legislature, the question must be decided by the court rather than the jury. Because of our conclusion that the evidence is not sufficient to support the verdict, the judgment from which the appeal is taken is reversed.

ROBERTS and SMITH, JJ., concur.

SICKEL, P. J., and RUDOLPH, J., dissent.