CHERNOTIK, Appellant v. SCHRANK, Respondent

(79 N.W.2d 4)

(File No. 9596. Opinion filed November 1, 1956)

**L. E. Schreyer,** Lake Andes, **Kirby, Simons, McDonnell & Kirby,** by **Blaine Simons,** Sioux Falls, for Plaintiff and Appellant.

**Davenport, Evans, Hurwitz & Smith** and **Robert C. Heege,** Sioux Falls, **Robert E. Barnhart,** Armour, for Defendant and Respondent.

SMITH, J. While riding as a "guest" of defendant "without compensation" plaintiff received severe injuries when the automobile went out of control and overturned. Her cause was submitted to a jury and verdict for plaintiff was returned. On the theory that the evidence is insufficient to establish that plaintiff's injuries resulted from the "willful and wanton misconduct" of defendant as required by SDC 44.0362, the trial court entered judgment n. o. v. for defendant. The plaintiff has appealed and asserts that in so doing the trial court erred.

The Chernotik and Schrank families live on farms near Ravinia, South Dakota. On the morning of July 22, 1953 the defendant, DeAnn Schrank, then just sixteen years of age, had the consent of her father to use his 1953 Chevrolet automobile to drive her brother to the Chernotik farm where he was to do some windrowing, and then to Ravinia to see her girl friend, Lorene Sweeney. While at the Chernotik farm, the plaintiff, Janet Chernotik, then nine years old, asked if she could go with DeAnn. They drove to Ravinia where they were joined by Lorene, and from there they drove to Wagner. DeAnn had been instructed to keep in touch with her brother, so after they had spent a few minutes in Wagner they drove back to the Chernotik farm.

Extending north and south in front of the Chernotik buildings is a graded county highway. Added gravel had been placed on this grade during the summer. Traffic had worn three tracks in this gravel; both north and south traffic used the center track. The width of these tracks is not disclosed by the record. Three descriptions of the condition of the highway appear in the testimony. DeAnn said the gravel was deep on the edge but in the center, "It was a little loose, but not bad". In explaining what she meant by a "little loose" she said, "Well, it wasn't like gravel roads that had been traveled on a lot." A second description was given by a State Highway Patrolman who testified on behalf of plaintiff. He said there was no gravel in the three tracks, but there was loose gravel between the tracks. He could not remember whether the road had been freshly graveled. He was asked about the gravel between the tracks and said, "Probably 3 or 4 inches of

gravel, I'm not sure". The third description came from plaintiff's witness, the sheriff. The question was asked "Across the surface of the road there were 3 tracks and then the loose gravel, is that it?" And he answered, "The loose gravel in between the tracks, yes. There wasn't a whole lot; there was some, but not too much". That the grader blade had made windrows of gravel along each edge of the grade about six inches deep, and a foot wide is undisputed. It is also undisputed that the grade was straight and level, and the surface was dry. It was a bright summer day and no other vehicles were in sight.

As they left Wagner, DeAnn and Lorene were on the outside, and Janet in the center of the front seat. During the trip DeAnn and Lorene visited intermittently about a wedding they were to attend, and a vacation trip they hoped to make together. About three miles from Wagner, traveling on blacktop, as they were rounding a curve, Janet asked DeAnn to slow down. She did slow down but shortly regained her former speed. When they reached the above described county grade, they first turned south a mile for the purpose of pointing out the home of another girl friend, and then they turned around and went north toward the Chernotik buildings. As they approached those buildings De Ann slowed down to fifteen or twenty miles an hour, but they then increased speed and continued on north. About three-quarters of a mile to the north the car went out of control, rolled over more than once and came to rest on its top in the east ditch facing south. Its top and some portions of its sides were crushed in. Mr. Schrank did not deem it worth repairing and sold it as it was. The marks made on the surface were described by the patrolman and the sheriff. As it left the east tracks it traveled to the west side of the grade; there it turned toward the east and left a double track as though it had gone sideways for a distance, then it started to roll, and only left four gouges in the surface, spaced respectively 10, 18, and 21 feet apart. It came to rest a distance of 159 feet from the point where it apparently first went out of control. As we have indicated, Janet was severely injured, and Lorene was killed.

DeAnn had been driving alone for about six months.

Before that she had driven for several months with her father. In teaching her to drive he had instructed her to drive with care on rough or graveled roads.

The speed of the vehicle just prior to the accident was estimated by Janet as between 50 or 60 miles per hour and by DeAnn at not more than 45 miles per hour. A witness for plaintiff who was working in a field four or five blocks north and east of the Chernotik buildings estimated the speed at from 50 to 60 miles per hour as the automobile passed along the road. Janet admitted she had estimated the speed at 45 to 50 miles per hour, in an examination before trial.

Just before the accident Janet was operating the radio, and testified she was not frightened. According to the testimony of DeAnn, she lost control because Janet bumped her arm as she moved back from the radio. Janet said she did not remember bumping DeAnn. After the accident DeAnn told Janet's mother, "I didn't mean to, I got my speed up and I lost control."

█ Such is the testimony, which under familiar principles we are required to view in the light most favorable to plaintiff.

The pertinent language of our statute reads, "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, * * *." SDC 44.0362.

██ In Melby v. Anderson, 64 S.D. 249, 266 N.W. 135 at 137, it was written: "Willful and wanton misconduct * * * means something more than negligence. They describe conduct which transcends negligence and is different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally

did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibility) produce the precise result which it did produce and would bring harm to the plaintiff." This interpretation has received legislative approval, and has been adhered to throughout the course of our decisions. Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232.

Our decisions have indicated that it is the "element of an affirmatively reckless state of mind", Granflaten v. Rohde, 66 S.D. 335, 283 N.W. 153, 157, the "element of deliberate recklessness", Espeland v. Green, 74 S.D. 484, 54 N.W.2d 465, 467, which differentiates the wilful and wanton misconduct contemplated by this statute from conduct the law has denominated negligence. The lawmakers intended that liability to the described guest should arise only from conduct which is both wanton and wilful. This legislative concept is more akin to an intentional tort than to negligence.

An external or objective test may be employed in determining the presence of this essential element of deliberate recklessness. Espeland v. Green, 74 S.D. 484, 54 N.W.2d 465; Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232. In Restatement, Torts, § 500 it is written, "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." This standard is modified when the actor is a child; he is required to conform to conduct which it is reasonable to expect from children of like age, intelligence and experience. Doyen v. Lamb, 75 S.D. 77, 59 N.W.2d 550; Carbonneau v. MacRury, 84 N.H. 501, 153 A. 457, 73 A.L.R. 1266; Restatement, Torts, § 283, Comment (e); Prosser, Law of Torts, 2d Ed., § 31, p. 128.

That reasonable men acting reasonably could find that sixteen-year-old youngsters of average intelligence with months of experience in driving, who were familiar with this particular road, and who had been instructed to drive with care on gravel and rough roads, were negligent in driving this road at a speed of 50 to 60 miles an hour, we do not doubt. The crucial inquiry is, does this record offer room for sound difference of opinion among reasonable minds whether it would be reasonable to expect such a class of children would recognize that so driving this country road was so highly dangerous as to promise in all probability such conduct would result in catastrophe? Of this we are not persuaded.

■ The culpability of DeAnn's conduct must be judged in the light of the probabilities apparent to her or which should have been apparent to her, and not "with the wisdom born of the event". Greene v. Sibley, Lindsay & Curr Co., 257 N.Y. 190, 177 N.E. 416, 417. She was on a country roadway which was level and straight, with no other traffic to obstruct her passage or vary her course. While there was loose gravel on the surface of the highway, the only permissible inference is that it had been there for a period of weeks at least. Counsel describes the tracks which traffic had worn as "narrow". We discover no basis in the record for such a description. The described tracks offered DeAnn a smooth, straight, level pathway from which all or most all of the gravel had been worn away. It is common talk that a driver of these modern cars attains a speed of 50 to 60 miles per hour without a consciousness of excessive speed. It would be reasonable to infer that while so driving along such a pathway on a level graveled highway that such a class of children would be conscious of the fact that they were violating their parents' instructions, and in so doing were incurring some risk of harm. However, in our opinion, it would be unrealistic and unreasonable to draw the further inference that they would actually be conscious that in all probability, as distinguished from possibility, their misconduct would result in serious harm.

There is faint argument that when a subjective test is applied there is support for an inference that DeAnn's

conduct resulted from a mental attitude of deliberate recklessness. This contention is predicated upon the physical facts and the more or less constant speed maintained during the morning, notwithstanding the single protest while rounding a curve three miles out of Wagner. We deem the contention to be without merit.

It is our opinion, after a careful consideration of the entire record, that the evidence is insufficient to support a finding of wilful and wanton misconduct, and therefore the trial court did not err in entering judgment for defendant. Cf. Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 72 A.L.R. 7.

The judgment of the trial court is affirmed.

All the Judges concur.