WITTMEIER, Special Administrator, Appellant v. POST,
Respondent and
SVANDA, Special Administrator, Appellant v. POST,
Respondent

(105 N.W.2d 65)

(File No. 9825. Opinion filed September 30, 1960)

**Morgan & Fuller,** Mitchell, **Robert W. Hirsch,** Tripp, for Plaintiffs and Appellants.

**John A. Engel,** Avon, **Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendants and Respondents.

HANSON, Judge.    Two wrongful deaths arising out of the same fatal accident were consolidated for trial and have been appealed here in one proceeding. Plaintiff's decedents, Rodney Wittmeier and Ronald Svanda were killed on November 6, 1957 while riding as passengers in an automobile driven by the defendant Charles Post. Defendant's cousin, Frank Post, was also a passenger in the car. All of the boys were fifteen years of age and attended Tyndall High School where they participated together in sports and other school activities. On the day of the accident the boys were hunting geese. Defendant had obtained permission to use his father's 1951 Buick automobile for this purpose. The accident took place on a country gravelled highway when the car struck a steel bridge which was slightly off-set from the regular lane of the highway. The impact completely severed the car in the middle resulting in the deaths of plaintiffs' decedents. Shortly before the accident defendant had been driving at a speed of at least

seventy miles per hour and some time before the boys had requested him (jokingly or otherwise) to slow down.

The jury returned verdicts in favor of defendant in both cases. Plaintiffs appeal from the adverse judgments and from the order denying a new trial contending the court erred (1) in allowing the jury to view the scene of the accident, (2) in instructing the jury as to the standard of care for a child driving a motor vehicle, and (3) in denying a new trial because of improper conduct of the bailiffs. Although suggested in the briefs of counsel the sufficiency of the evidence to sustain a recovery for wilful and wanton misconduct is not presented.

▇▇ The condition and topography of the highway leading up to the scene of the accident was an important factor for the jury to consider in appraising defendant's conduct in the light of the circumstances then existing. That portion of the highway was characterized as rolling or somewhat hilly. Plaintiffs contend the jury was completely and fully informed as to the nature of the highway by the testimony of witnesses, photographs, and profile charts and the trial court abused its discretion in allowing the jury to travel over the highway at a speed less than the speed travelled by defendant which in effect allowed the jury to conduct an experiment under different conditions from those existing prior to, and at the time of, the accident. We find no merit in such contention. During the trial both parties introduced topographical charts or plats of the highway in question. These charts were drawn to different horizontal and vertical scales. One aggravated the elevations in the highway while the other minimized them. By reason of such conflicting evidence it was well within the discretion of the trial court to allow the jury to view the scene of the accident in order for them to evaluate the record evidence in its proper perspective. SDC 33.1322; Mason v. Braught, 33 S.D. 559, 146 N.W. 687. While viewing the scene of an accident it would be improper for the jury to conduct tests or attempt to simulate or re-enact the accident.

By virtue of our guest statute defendant is liable to plaintiffs only for damages caused by his "willful and wanton misconduct". SDC 44.0362. In this regard the trial court instructed the jury on the external or objective test for determining the essential element of "an affirmatively reckless state of mind". Instruction 8, in language apparently taken from the recent case of Chernotik v. Schrank, 76 S.D. 374, 79 N.W.2d 4, informed the jury that "* * * an actor's conduct is in reckless disregard of the safety of another, if he intentionally does an act, or fails to do an act, which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that sustantial harm will result to him". The trial court went on in the same instruction to advise the jury that "when the actor is a child; he is required to conform to conduct which it is reasonable to expect from children of like age, intelligence and experience". Plaintiffs excepted to this portion of instruction 8 upon the ground that when a child of fifteen years of age is licensed to operate a motor vehicle on the highways of our state such child is bound to conform to the laws of our state in its operation. In other words, plaintiffs contend the youthful operator of an automobile should be required to conform to the same standard of conduct as an adult driver.

In ordinary negligence actions plaintiffs' contention finds substantial support in modern authority. It is suggested in Comment c. under § 283A of the American Law Institute's Tentative Draft No. 4 of the Restatement of Torts that:

"An exception to the rule stated in this Section may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. As in the case of one entering upon a professional activity which requires special skill (See § 299A), he may be held to the standard of adult skill, knowledge and competence, and no allowance may be made for his

immaturity. Thus, for example, if a boy of fourteen were to attempt to fly an airplane, his age and inexperience would not excuse him from liability for flying it in a negligent manner. The same may be true where the child drives an automobile. In this connection licensing statutes, and the examinations given to drivers, may be important in determining the qualifications required; but even if the child succeeds in obtaining a license he may thereafter be required to meet the standard established primarily for adults." (Approved at 1959 meeting of American Law Institute).

See also Vol. 2 Harper & James "The Law of Torts" p. 927. However, we are not here concerned with liability for simple negligence.

     ᐧ Negligence is the failure to exercise ordinary care under the circumstances. Intent is not an essential element. Wilful and wanton misconduct on the other hand involves something more. It involves "conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong". Melby v. Anderson, 64 S.D. 249, 266 N.W. 135, 137. It is the element of deliberate recklessness which differentiates wilful and wanton misconduct from ordinary negligence. It may be tested or shown by evidence which is either subjective or objective in nature. When a defendant's actual reckless state of mind is shown the evidence is subjective in nature. On the other hand every person is presumed to intend the natural and probable consequences of his own acts and a defendant's reckless state of mind may be inferred from conduct and actions so patently dangerous that a reasonable person under the circumstances would know, or should know, that his conduct will in all probability prove disastrous to his guest. Such evidence is objective in nature. In either event when an immature youth is charged with wilful and wanton misconduct he cannot be judged in the same light or by the same standard as an adult. He simply does not have, and cannot be expected to have, the skill, judgment, and conscious

realization of the probable consequences of his actions that a more mature and experienced driver would, or should have. Therefore, when a child is charged with wilful and wanton misconduct it would be unreasonable and unrealistic to judge his conduct by the adult standard of the reasonable man. Accordingly, the trial court, in this case, properly instructed the jury that defendant must "conform to conduct which it is reasonable to expect from children of like age, intelligence and experience". As the California court pointed out in a similar case "the measure of caution that is required of adults to disprove wilful misconduct is not to be expected of inexperienced 16-year-old boys". Mosconi v. Ryan, 94 Cal.App. 2d 227, 210 P.2d 259, 262.

This case was tried in the city of Tyndall. About 4:30 in the afternoon of November 12, 1958 the case was submitted to the jury.Before retiring to deliberate the jurors were instructed they could seal their verdict and return into court at 9:30 a.m. the following morning. The trial judge and his reporter returned to their homes in the city of Yankton, a distance of approximately 30 miles from Tyndall. Likewise counsel for both parties departed from the place of trial. For a statement of events transpiring after the case was submitted to the jury we quote from the trial court's memorandum decision: "It appears from the affidavits of Elsie Maruska and John Wertz, bailiffs who had charge of the jury during its deliberation, and Mabel Lubbers, Clerk of Courts, that about midnight the foreman of the jury advised the bailiffs they wished to hear the testimony of Charles Post, the defendant; that the bailiffs consulted Mabel Lubbers, the Clerk of Courts, and then told the foreman they could have nothing more. Thereafter the foreman told the bailiffs they did not understand some of the words in the instructions and wished them explained by the Judge; that the bailiffs told the foreman the Judge had gone to Yankton; the foreman then asked for a dictionary which request was refused." Sometime later (the exact time is not shown of record) the jury agreed on a verdict, which was sealed, and the jury was permitted to separate. The verdict was rendered at the opening of court the following morning.

■■ A trial court is given discretionary power to direct the jury to bring in a sealed verdict, at the opening of court, in case of an agreement during a recess or adjournment for the day. SDC 33.1336. Its sole purpose is to help relieve some of the juror delay and inconvenience necessarily inherent in every trial by jury. Such practice serves no other function or purpose.

SDC 33.1336 provides that "While the jury is absent the Court may adjourn from time to time, in respect to other business; but it is nevertheless open for every purpose connected with the cause submitted to the jury until a verdict is rendered or the jury discharged. * * *" In the early case of People v. Odell, 1 Dak. 197, 46 N.W. 601, 603, the jury was charged and retired to consider their verdict at 9 o'clock on Saturday night. About 3 o'clock Sunday afternoon, the jury not having agreed, the judge on his own motion had the jury brought into court and gave them additional instructions. It was contended the giving of additional instructions, being a judical act, could not be given on the Sabbath. The court in construing a statute similar to the above said:

"* * * the jury being out, they are not permitted to separate until they have agreed upon their verdict, or are discharged by the court from further consideration of the case. The Code of Criminal Procedure provides (section 388) that 'while the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for every purpose connected with the cause submitted to them, until a verdict is rendered, or the jury discharged.' There is no question as to the right of a jury to bring in a verdict, and the court to receive it, on that day. The very reason for receiving the verdict is that they may not be compelled to remain in the jury-room during the entire day. If they were unable to agree from a failure to understand alike the instructions on a certain point, would they not have the right to come in and ask to be instructed on that point, or must they wait until Monday morning? It is not seriously contended that they would not."

After a jury has retired for deliberation, with or without an instruction permitting a sealed verdict, "if there be a disagreement between them as to any part of the testimony or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into Court. Upon their being brought into Court the information required must be given in the presence of, or after notice to the parties or counsel, and be taken down by the shorthand reporter." SDC 33.1325. The deliberation of the jury is the final and crucial stage of any trial. In the interests of justice it is necessary and requisite they have a full and complete understanding of the evidence and the instructions of the court. If, during their deliberations, the jury desire additional instructions or information their requests should be acted upon without delay. Otherwise verdicts may be indirectly coerced or rendered under a misunderstanding or misapprehension of the law or facts. Our statutes make it mandatory for the trial judge, counsel and parties (unless their presence be waived), court reporter, and clerk of courts to be immediately present, or readily available, at the place of trial at all times during the deliberations of the jury.

The trial judge is the only person having authority to act upon or answer requests of the jury and to insure a verdict based upon a full and complete understanding of the testimony and instructions of the court it is necessary that all requests of the jury pertaining to the trial be promptly conveyed to, and acted upon by, the trial judge in open court in the presence of, or after notice to, the parties or their counsel.

A bailiff is a mere custodian of the jury. Wheaton v. United States, 8 Cir., 133 F.2d 522. Unless by order of the court the bailiff in charge of a jury "must not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon a verdict; or to make such communications necessary for their food and maintenance while in his charge." SDC 33.1324. Such is the solemn oath of every bailiff in every case.

As custodians only it was the duty of the bailiffs to communicate the requests made by the jury to the trial judge. They did not have the power or authority to answer or refuse

the same. Their assumption of such power was clearly improper and, in our opinion, requires a new trial. The failure to comply with mandatory provisions of our law in matters of such importance as instructions to the jury and communications between the court and the jury constitutes error per se and is prejudicial as a matter of law unless it is shown that no prejudice resulted or could have resulted from such noncompliance. Ferderer v. Northern Pacific Ry. Co., 75 N.D. 139, 26 N.W.2d 236. To hold otherwise this court would have to indulge in unwarranted speculation as to the nature of the jury's disagreement and misunderstanding and its effect on the ultimate verdicts.

Reversed.

All the Judges concur.

SEACAT, Circuit Judge, sitting for SMITH, J.