**Irene M. YARROW, Plaintiff,**

v.

**STERLING DRUG, INC., a Foreign Corporation, Defendant.**

**Civ. No. 65–74S.**

United States District Court
D. South Dakota, S. D.

Jan. 25, 1967.

Ellsworth E. Evans, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for plaintiff.

M. T. Woods, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and R. J. Leonard, St. Paul, Minn., for defendant.

MEMORANDUM DECISION

NICHOL, Chief Judge.

This is a diversity suit, tried to the Court sitting without a jury, brought by Mrs. Irene M. Yarrow against Sterling Drug, Inc., a drug manufacturer, for permanent injuries to her eyes, alleged to have been caused by Sterling's failure to warn her doctor of the side effects of the drug chloroquine phosphate. The drug in question is sold by Sterling under the trade name Aralen, and the injury to the plaintiff (hereinafter Mrs. Yarrow) is known as chloroquine retinopathy, a degeneration of cells in the retina of the eye, causing blindness.

Mrs. Yarrow was born on July 1, 1918, and was forty-eight years of age at the

time of the trial. She has worn glasses since she was eighteen years of age. As a treatment for an arthritic condition, she began taking the drug Aralen on January 13, 1958, as prescribed by her doctor, and had continuously taken it on a daily basis until October 19, 1964. Although she wore glasses, an ocular examination in March, 1963, showed her retinas to be normal and her vision correctible to 20/20. She began having difficulty with her eyes in August of 1964, and an examination on October 12, 1964, revealed macular degeneration in each eye. The result of the degeneration is central blindness in each of Mrs. Yarrow's eyes, resulting in a loss of eighty per cent of her vision. The testimony showed that the blindness was caused by a side effect of the drug Aralen and is irreversible.

There is no question of any defect in the manufacture of the drug, nor of its beneficial qualities when taken as prescribed. Mrs. Yarrow contends that defendant drug manufacturer (hereinafter Sterling) failed to properly warn her doctor of the potential danger of such side effects as chloroquine retinopathy occurring from the daily intake of Aralen and that, as a result of this failure, she has become permanently blinded.

There are no South Dakota decisions dealing with the duty of drug manufacturers to warn of the possibility of injury to a hypersensitive or idiosyncratic group. The Court, however, must not choose the rule which it would adopt for itself, if free to do so, but must choose the rule which it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt. American Service Mutual Ins. Co. v. Bottum, 371 F.2d 6, 9, n. 2, (8th Cir. 1967). In past decisions, the South Dakota Supreme Court has often looked to the Restatement of Torts when no South Dakota precedent existed or for supporting authority in determining a rule of law.[1] The Restatement (Second), Torts Sec. 402A, states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The liability is not absolute. Comment (k) to Rule 402A discusses the precise problem presented here:

> "*Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very

1. See, e. g., Albers v. Ottenbacher, 79 S.D. 637, 116 N.W.2d 529, 531 (1962); Riksansrud v. City of Canton, 79 S.D. 592, 116 N.W.2d 234, 240 (1962); Wittmeier v. Post, 78 S.D. 520, 105 N.W.2d 65, 68, 95 A.L.R.2d 853 (1960); Bucholz v. City of Sioux Falls, 77 S.D. 322, 91 N.W.2d 606, 611 (1958); Steckman v. Silver Moon, Inc., 77 S.D. 206, 90 N.W.2d 170, 172 (1958); Chernotik v. Shrank, 76 S.D. 374, 79 N.W.2d 4, 7 (1956); McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485, 488 (1946); Kimball v. City of Sioux Falls, 71 S.D. 35, 20 N.W.2d 873, 874 (1945); Fenton v. Ackerman, 66 S.D. 465, 285 N.W. 516, 517 (1939); Morris v. City of Britton, 66 S.D. 121, 279 N.W. 531, 532–533 (1938); Robinson v. Minnehaha County, 65 S.D. 628, 277 N.W. 324, 327 (1938); Ulrikson v. Chicago, M., S. P. & Pac. Ry., 64 S.D. 476, 268 N.W. 369, 375 (1936).

serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, *and proper warning is given,* (emphasis added) where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

The Eighth Circuit Court of Appeals has recently ruled under similar circumstances, that a drug manufacturer has a duty to make reasonable efforts to warn the medical profession of the susceptibility of a hypersensitive or idiosyncratic group to suffer rare side effects where the manufacturer knew or should have known of such a possibility. Sterling Drug, Inc. v. Cornish, 370 F.2d 82, (8th Cir. 1966).

The principal questions, therefore, are whether the drug manufacturer has a duty to warn under the facts as shown by the record in this case, and if such a duty exists, whether there was a breach thereof by Sterling Drug, Inc.

The record reveals that the medical publications, as early as 1957, suggested some connection between retinal or macular changes and chloroquine. The record also shows that Sterling, after reviewing such publications and other sources of information, felt impelled to make changes in its literature on the drug Aralen by 1960, and in 1963, sent out a letter specially warning of "certain ocular complications." The Court feels that these facts are sufficient to support a finding that Sterling knew or had reason to know that some persons would be injured by the drug's side effects. Because Sterling had such knowledge, it had a duty to warn. Sterling Drug, Inc. v. Cornish, supra, 370 F.2d at 85.

Having found that Sterling had a duty to warn, the Court now turns to the question of whether that duty has been breached. Although all of the government regulations and requirements have been satisfactorily met in the production and marketing of Aralen, and in the changes made in the literature, including the letter sent out, the standards are minimal. Stromsodt v. Parke-Davis and Co., 257 F.Supp. 991, 997 (D.C.N.D. 1966). In situations such as this, where the drug is a prescription drug, the manufacturer has a duty to properly warn the doctor of the dangers involved. Sterling Drug, Inc. v. Cornish, supra, 370 F.2d at 85; Stromsodt v. Parke-Davis and Co., supra, 257 F.Supp. at 997.

The record in this regard shows that Sterling, as do others in the drug manufacturing industry, places its product information before the doctor by use of listings in a reference work, known as the Physicians' Desk Reference (P.D. R.); by use of product cards mailed to the physician; by use of special letters mailed to the physician; and by use of "detail men", who call personally on the physician, orally give him information on new drugs being introduced, and who leave literature on such new drugs and samples thereof with the doctor.

The warnings published in the P.D.R. on the side effects of the drug Aralen, from 1958 until 1961, refer to "visual disturbances". There was no listing of Aralen in P.D.R. in 1962. In 1963, the warning included blurring of vision, corneal changes, and retinal changes reported to be rare and largely irreversible. In 1964, the warning was largely the same, containing more specifics regarding retinal change, reported rare and irreversible.

The product card on Aralen, in 1957, included blurring of vision in the side effects. In 1959, the product card warned of temporary blurring of vision, corneal changes, and advised periodic eye examinations; in 1960, it warned of temporary blurring of vision, retinal vascular response, macular lesions, evidently irreversible, and advised periodic eye examinations. The same warning was given in 1961. In 1962, the Aralen product card warns of temporary blurring of vision, corneal changes and retinal changes. It suggests trimonthly examinations.

A letter mailed in 1963 advised doctors that "certain ocular complications have sometimes been reported during prolonged daily administration of chloroquine." It suggested trimonthly examinations, and asked that vision impairment and retinal change be reported.

The most significant and efficient means of presenting drug information to the doctor entails the use of "detail men", who make periodic personal calls on the individual doctor. In this case, Sterling's detail man introduced Mrs. Yarrow's doctor to Aralen, explained its uses and that it was the trade name for chloroquine phosphate. This was late in 1957, or early in 1958. From that time on, although the Sterling detail man called on the doctor at four to six week intervals, the detail man did not bring the side effects of Aralen to his attention.

The record shows that the detail men receive special training as to the various drugs, and that for the most part, they were pharmacists, chemists, or had a medical background. The detail men are kept up to date on the latest developments in drugs.

The doctor testified that he received great amounts of literature on the various drugs he was using; that it was impossible to read all of it; that he relied on detail men, medical conventions, various articles in medical journals, and conversations with other doctors for information on the drugs he was prescribing.

This court feels, as was stated in the recent Eighth Circuit decision, that:

> "If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided." Sterling Drug, Inc. v. Cornish, 370 F. 2d at 85.

The drug manufacturer must make reasonable efforts to warn the patient's doctor.

■ In this case, the Court feels that the actions of Sterling did not constitute a proper warning. Where the doctor is inundated with the literature and product cards of the various drug manufacturers, as shown here by the facts, a change in the literature or an additional letter intended to present new information on drugs to the doctor is insufficient. The most effective method employed by the drug company in the promotion of new drugs is shown to be the use of detail men; thus, the Court feels that this would also present the most effective method of warning the doctor about recent developments in drugs already employed by the doctor, at no great additional expense. The detail men visit the doctors at frequent intervals and could make an effective oral warning, accompanied by literature on the development, that would affirmatively notify the doctor of side effects such as shown in the facts in this case.

■ There is no question of intervening proximate cause in this case. As Sterling failed to properly warn the doctor, it is liable regardless of anything the doctor may or may not have done. Ster-

ling Drug, Inc. v. Cornish, supra, 370 F. 2d at 85.

Mrs. Yarrow has had an arthritic condition for the past fifteen years, but she is otherwise in good health. A person of her age has a life expectancy of somewhat more than twenty-five years. She is a housewife and the mother of four boys, two of whom are living at home, ages sixteen years and eleven years, respectively. Prior to 1964, she performed her duties without difficulty. She enjoyed reading books, and sewing clothes for herself. Since the Fall of 1964, however, she has been unable to read, sew, cook, drive a car, watch television, or recognize people, or even her loved ones, as she did before.

The Court awards damages to Mrs. Yarrow, based upon all of the facts in the record, in the amount of $180,000.00, and finds that the same constitutes a fair, just and adequate sum.

This memorandum decision shall constitute the Court's findings of fact and conclusions of law.