MINICK, Respondent v. ENGLERT, Appellant

(167 N.W.2d 551)

(File No. 10415.   Opinion filed April 22, 1969)

**Austin, Hinderaker & Hackett,** Watertown, for defendant and appellant.

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for plaintiff and respondent.

ROBERTS, Judge.

This is an appeal by defendant, Ronald L. Englert, from a judgment entered against him after the jury had returned a substantial verdict for the plaintiff. The action was brought under the provisions of SDC 44.0362 commonly referred to as the guest statute. The sole question presented here is whether there was sufficient evidence of "Willful and wanton misconduct" within the meaning of that statute on the part of the defendant to require jury determination. We, therefore, review the evidence and inferences reasonably to be drawn therefrom in the light most favorable to the respondent.

It is alleged that on June 16, 1963, plaintiff was riding in a motor vehicle being operated by the defendant in a northerly direction on U. S. Highway 81 in Hamlin County; that the highway at the time was under construction and a culvert had been removed; that detour and warning signs and barricades had been erected; and that defendant driving his motor vehicle at an excessive and unlawful rate of speed ignored the detour and warning signs and flares and drove his motor vehicle after striking a barricade into the opening left by removal of a culvert. Defendant answered interposing a general denial and affirmatively alleging that if the defendant was guilty of negligence plaintiff having knowledge of defendant's disregard for his safety assumed the risk of injury.

At the time and prior to the accident defendant was an assistant resident engineer employed by the state highway department. He and his superior were in charge of construction work on U. S. Highway 81 which started at a point about ten miles south of Watertown and extended south a distance of about eleven miles. A culvert near the south end of the project had been removed and had been replaced by a concrete box culvert which was about two feet higher than the highway grade to the south. There was an excavation about eighteen feet in width along the south side of the new culvert. A detour was provided for the passage of traffic around the west end of the culvert and excavation and contractors on the project had erected and maintained signs to warn users of the highway of dangers thereon. Harlan Seeley, called as a witness by the plaintiff, testified that he was the prime contractor on the project; that he had been over the detour about eight o'clock in the evening of the accident; that there were six warning signs along the east edge of the traveled portion of the highway south of the culvert; that at the base of a detour sign there were two lighted flare pots; that a "Road Closed" sign and a barricade across the highway had been erected south of the culvert and excavation; and that there were similar signs and a barricade on the north side of the culvert for the protection of southbound traffic.

The accident occurred on a Sunday at about 10:40 p. m. The preceding day plaintiff, a resident of Sioux Falls, went to Watertown to spend the weekend fishing with defendant. They spent Sunday forenoon fishing and during the afternoon returned to Watertown. They again in the evening went to the same lake to fish accompanied by an acquaintance of the defendant whom defendant by chance met at a tavern. Defendant and his companions left the lake at dusk and according to the testimony of the plaintiff there was conversation on the return trip "about going down on the job site" and that defendant said that "he felt that he should be down there to check on his people there". After two stops at the construction site, defendant drove over the detour referred to and south a few miles to a tavern on Lake Poinsett. Defendant and his companions stayed at the tavern

about an hour and a half during which time they drank some beer. There is also evidence of the drinking of 3.2 beer when fishing and at the tavern in Watertown. The accident occurred as defendant drove back to Watertown. Defendant testified that he drove past the warning signs, but had no recollection of seeing them.

The two highway patrolmen who were at the scene shortly after the accident and before the occupants of the damaged vehicle had been taken to the hospital testified that the front end of the defendant's Oldsmobile had struck the concrete culvert and that the vehicle was wedged in the excavation. They established by measurements the beginnings of the tire marks made by defendant's vehicle as being 720 feet south of the excavation. They described the highway as substantially level and stated that the surface was dry and the weather was clear.

The cause was submitted to the jury under instructions that plaintiff, a guest passenger, had the burden to establish that defendant was guilty of "willful and wanton misconduct" in the operation of the vehicle in which plaintiff was riding at the time and place of the collision with the culvert.

Defendant contends that there was nothing unusual about defendant's driving until he suddenly realized that he was in the construction area and approaching the barricade. Defendant testified as above stated that he had no recollection of seeing the warning signs immediately before the accident. It is argued that there is no evidence of conscious realization that conduct of the defendant would probably result in injury to the plaintiff.

The guest statute, SDC 44.0362, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall

have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

In Melby v. Anderson, 64 S.D. 249, 266 N.W. 135, wherein the guest statute was first construed, this court said:

"That to create liability under the statute there must be (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) omission to use such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another. * * * To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his con·duct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

The application of the foregoing rules in cases holding that the evidence was sufficient to sustain the finding of "willful and wanton" conduct includes the following: Martins v. Kueter, 65 S.D. 384, 274 N.W. 497; Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393; Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232; Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695. Willful and wanton misconduct may be considered as describing conduct of a driver when he does an act not conscious of the high degree of manifest danger, but under the circumstances where he

should have known. Espeland v. Green, 74 S.D. 484, 54 N.W.2d 465; Wentzel v. Huebner, supra; 2 Restatement of Torts, § 500. This concept of recklessness is clearly stated in Prosser on Torts (2nd Ed.) p. 155: "* * * 'Wantonness,' or 'recklessness,' * * * means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."

■ Language in our cases describing willful and wanton conduct in terms of an affirmatively reckless state of mind establishing indifference, disregard of consequences and the like, indicate that neither court nor jury has any way of determining mental attitude of the driver except by inference from his conduct. As said in Espeland v. Green, supra, "We believe the point for which respondent's counsel contend, that is that the intent or state of mind of the driver at the time of the accident cannot justifiably be determined by his own statement, is established law. Other courts have called the proper method of determining the driver's intent the 'external standard'. Under it the driver's mental attitude is established not by what he said nor even by what he may actually have thought, but rather by the attitude that an ordinarily prudent person would have had under all the attending circumstances. This rule is recognized in the Melby v. Anderson opinion, 64 S.D. 249, 266 N.W. 135, 137, under the third test stated by the court in this language: '(3) omission to use such care and diligence to avert the threatened danger when, **to the ordinary mind**, it must be apparent that the result is likely to prove disastrous to another.'" See also Chernotik v. Schrank, 76 S.D. 374, 79 N.W.2d 4.

■ ■ Carrying out defendant's argument to a logical conclusion would mean that a driver of a motor vehicle may deny seeing a hazard which is readily apparent and thus avoid liability irrespective of the fact that there was no reasonable excuse for failure to see. This contention is untenable. Consciousness of a risk may sometimes be revealed by something defendant says or because of circumstances confronting him at

the time of and prior to the accident. See Martins v. Kueter, supra; Stoll v. Wagaman, supra; Wittmeier v. Post, 78 S.D. 520, 105 N.W.2d 65, 97 A.L.R.2d 853. It appears from the facts and circumstances of this case that defendant entered into an area of danger without heeding warning signs and a barricade across the highway of which he had actual knowledge. There was no obstruction or impairment of visibility and no reasonable excuse for defendant's failure to see the signs and the approaching hazard. Defendant concedes that it was his responsibility as an engineer and employee of the state to require contractors on the project to provide and maintain necessary detours and to erect and maintain signs to warn travelers of unsafe places on the highway under construction and that he had actual knowledge of the detour and the warning signs which had been so provided by contractors. The evidence was sufficient to justify the jury in finding that plaintiff's injury was caused by the willful and wanton misconduct of the defendant.

The trial court did not err in refusing to grant the motions for directed verdict and in submitting the case to the jury.

Judgment affirmed.

All the Judges concur.