2001 SD 100

**Christopher CROMWELL, Plaintiff and Appellee,**

v.

**RAPID CITY POLICE DEPARTMENT; City of Rapid City; and Michael W. Lang, in His Official Capacity as an Officer of the Rapid City Police Department, Defendants, Third–Party Plaintiffs and Appellants,**

v.

**Steven B. Purchase, Third–Party Defendant.**

**No. 21582.**

Supreme Court of South Dakota.

Argued Feb. 13, 2001.

Decided July 25, 2001.

John S. Dorsey, Whiting, Hagg & Hagg, Rapid City, for plaintiff and appellee.

James S. Nelson and David E. Lust, Gunderson, Palmer, Goodsell & Nelson, Rapid City, for defendants and appellants.

LOVRIEN, Circuit Judge

[¶ 1.] The City of Rapid City and Officer Michael W. Lang appeal the trial court's denial of their motion for summary judgment based upon claims of sovereign immunity under SDCL 21–32A 1. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On August 1, 1997, Christopher Cromwell, was injured when a car driven by Steven B. Purchase of Rapid City, broadsided his vehicle. Purchase was intoxicated at the time of the crash and was being pursued by Rapid City Police Officer, Michael W. Lang. Cromwell's guardian served notice of claim upon City on or about January 12, 1998. Suit was commenced by City's admission of service on September 25, 1999.

[¶ 3.] At the time of the accident, City had in effect liability coverage with the South Dakota Public Assurance Alliance (SDPAA), a risk pool for claims. This coverage was claims paid coverage, meaning it only covered claims paid before termination of the policy.

[¶ 4.] In October 1998, City decided to terminate its coverage with SDPAA effective December 31, 1998 and purchase insurance coverage with St. Paul Insurance Company. The St. Paul policy became effective October 1, 1998, and was a claims made policy; the St. Paul policy did not cover any claims made before October 1, 1998.

[¶ 5.] The change from the risk pool to insurance created a coverage gap. By its actions, City gave up its coverage for claims that occurred before October 1, 1998 but had not been paid out by December 1, 1998. Approximately thirty claims against City, including Cromwell's, fell within this gap and are pending or are in some stage of litigation. During the negotiations to purchase liability insurance, City discussed but decided not to purchase tail insurance that would have covered all pending claims. City brought a motion for summary judgment, seeking dismissal of Cromwell's claim based on sovereign immunity.

[¶ 6.] The circuit court denied City's motion and City filed an intermediate appeal. We permitted the appeal to proceed and now affirm.

## STANDARD OF REVIEW

[¶ 7.] In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we have often stated:

[W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Dakota Cheese, Inc. v. Ford,* 1999 SD 147, ¶ 15, 603 N.W.2d 73, 76 (quoting *Campion v. Parkview Apartments,* 1999 SD 10, ¶ 22, 588 N.W.2d 897, 902 and *Wildeboer v. South Dakota Junior Chamber of Comm.,* 1997 SD 33, ¶ 9, 561 N.W.2d 666, 668). Summary judgment will be affirmed " 'only when there are no genuine issues of material fact and the legal questions have been correctly decided.' " *Casazza v. State,* 2000 SD 120, ¶ 8, 616 N.W.2d 872, 874 (quoting *Julson v. Federated Mut. Ins. Co.,* 1997 SD 43, ¶ 5, 562 N.W.2d 117, 119).

[¶ 8.] "Whether the defendants are protected by sovereign immunity is a question of law, reviewed de novo, with no deference given to the trial court's legal conclusions." *Hansen v. South Dakota DOT,* 1998 SD 109, ¶ 7, 584 N.W.2d 881, 883 (citing *Wilson v. Hogan,* 473 N.W.2d 492, 493 (S.D.1991)).

[¶ 9.] When the interpretation of a statute is in question, we have said:

Questions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the Court thinks it should have said, and the Court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.

*Lekanidis v. Bendetti,* 2000 SD 86, ¶ 16, 613 N.W.2d 542, 545 (quoting *Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539).

## ISSUES

[¶ 10.] **Did City waive its sovereign immunity by participation in the SDPAA for claims that arose during the time of that participation?**

[¶ 11.] **If sovereign immunity was waived by participation in the SDPAA, can City reassert sovereign immunity as to claims that arose during the time of participation, by withdrawing from SDPAA?**

## ANALYSIS AND DECISION

### Sovereign Immunity

[¶ 12.] Sovereign immunity is the right of public entities to be free from liability of tort claims unless waived by legislative enactments and is a time-honored doctrine, predating the United States Constitution. "When the Constitution was ratified, it was well established in English law that the Crown could not be sued

without consent in its own courts." *Alden v. Maine*, 527 U.S. 706, 715, 119 S.Ct. 2240, 2247, 144 L.Ed.2d 636 (1999) (citing *Chisholm v. Georgia*, 2 Dall. 419, 437–446, 1 L.Ed. 440 (1793) (Iredell, J., dissenting) (surveying English practice)). "Although the American people had rejected other aspects of English political theory, the doctrine that a sovereign could not be sued without its consent was universal in the States when the Constitution was drafted and ratified." *Id.*, 527 U.S. at 715–16, 119 S.Ct. at 2248, 144 L.Ed.2d 636.

[¶ 13.] The South Dakota Constitution ratified the doctrine with the adoption of Article III, Section 27, which provides, "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state." Although there has been legislative ratification and expansions of the doctrine, this Court has found that the doctrine is "judge made law." *High–Grade Oil Co., Inc. v. Sommer*, 295 N.W.2d 736, 738 (S.D.1980); *Sioux Falls Constr. Co. v. City of Sioux Falls*, 297 N.W.2d 454, 457 (S.D.1980). Limitations to this doctrine have been made by the courts and have been recognized by the states. The United States Supreme Court has recognized a number of limitations to the doctrine as it applies to the states. "The first of these limits is that sovereign immunity bars suits only in the absence of consent." *Alden*, 527 U.S. at 754, 119 S.Ct. at 2267, 144 L.Ed.2d 636. *See also In re Request for Opinion of the Supreme Court*, 379 N.W.2d 822, 825 (S.D. 1985). "The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities. The immunity does not extend to

suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Alden*, 527 U.S. at 754, 119 S.Ct. at 2267, 144 L.Ed.2d 636. *See, e.g., Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). By the adoption of SDCL 21–32A–3, the South Dakota Legislature has extended the reach of sovereign immunity to all public entities in this state, which includes municipalities.\*

### Consent to Suit or Waiver of Immunity

[¶ 14.] Courts have long held that the doctrine of sovereign immunity protects public entities not only from a final judgment but also from having to defend a claim in court. "[L]ike other forms of immunity, [sovereign immunity] protect[s] states not only from liability for money judgments; but, also, from being required to appear and defend itself against the claims of private parties." *Rhode Island v. United States*, 115 F.Supp.2d 269, 279 (D.R.I.2000). *See also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996); *State of Connecticut Dep't. of Envtl. Protection v. OSHA*, 138 F.Supp.2d 285, 288 (D.Conn.2001). Unless the state has given its consent or has abrogated or waived its immunity legislatively, public entities are free from the liability of tort claims. *In re Request for Opinion*, 379 N.W.2d at 825.

[¶ 15.] The state legislature has defined the conditions for the waiver of sovereign immunity at SDCL 21–32A 1:

> To the extent that any public entity, other than the state, participates in a

---

\* This statute provides:

> Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21–32A–1, any public entity is immune from liability for

> damages whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

risk sharing pool or purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit in the same manner that any other party may be sued....

[¶ 16.] Cromwell argues that the words, "to the extent that coverage is afforded thereunder," apply only to the purchase of insurance by a public entity and that participation by a public entity in a risk sharing pool, by itself, is sufficient to waive sovereign immunity. City argues that the "extent of coverage" language applies to both participation in a risk pool and purchase of insurance and sovereign immunity is waived by participation in a risk sharing pool only to the extent that coverage is afforded.

[¶ 17.] A judicial interpretation of a statute is proper only when the statute is ambiguous. In our view, SDCL 21–32A–1 is not ambiguous. For sovereign immunity to be waived, the legislature requires two things: (1) spreading the risk of loss over a larger group whether it be through a risk pool or insurance, (2) waiver of immunity to the extent of coverage. We cannot conclude that the legislature intended a public entity face unlimited liability simply by virtue of participation in a risk pool. Rather we conclude that the legislature intended that a public entity, participating in risk pool, face liability only to the extent that coverage is afforded by the pool.

[¶ 18.] Based on this reading of SDCL 21–32A–1, City's argument essentially is this: the purpose of sovereign immunity is to make sure that a public entity is not to be held liable for damages unless there are funds available for the satisfaction of the judgment. SDCL 21–32A–1 provides for the waiver of sovereign immunity to the extent that a public entity participates in a risk sharing pool and to the extent of coverage thereunder. Since SDPAA only provided claims paid coverage, when City withdrew from SDPAA, the extent of coverage afforded Cromwell's unresolved claim was zero. In effect, since Cromwell's claim was never paid, sovereign immunity was never waived. The trial court should have granted summary judgment.

[¶ 19.] When, then, does the waiver of sovereign immunity under SDCL 21–32A–1 occur: when the cause of action occurs, when a claim is finally settled or reduced to judgment, or somewhere in between? In our view, SDCL 21–32A–1 applies when all the requirements of SDCL 21–32A–1 have been met: (1) participation in a risk sharing pool or purchase of insurance, (2) waiver to the extent of coverage, (3) and by implication, a cause of action occurs which gives rise to a claim against the public entity. When all the statutory requirements have been met for the waiver of sovereign immunity, sovereign immunity is waived at that time.

[¶ 20.] The accident, which is the basis of Cromwell's claim, occurred August 1, 1997. City was participating in a risk pool and had coverage thereunder on that date. As to Cromwell's claim, sovereign immunity was waived on August 1, 1997, to the extent of the coverage afforded.

[¶ 21.] City asserts the claim was zero because it had not been paid. The Intergovernmental Contract for the SDPAA defines the extent of coverage provided to participants in the SDPAA. The term, "Scope of Coverage," is defined in Article III of this contract as, "the coverage, limits and deductibles as outlined in the Appendix and subsequent amendments thereto." This Appendix specifies coverage for general liability, automobile and automo-

bile physical damage liability, public officials liability, police professional liability and property and inland marine with limits of coverage up to $2,000,000 per line of coverage. The SDPAA coverage declarations page for City created a $100,000 deductible per claim. These terms define the "extent of coverage afforded" on August 1, 1997 and it was to this extent that sovereign immunity was waived by City on that date.

[¶ 22.] The fact that more than a year later, when City withdrew from the SDPAA, Cromwell's claim had not been paid does not mean that at the time of Cromwell's injury the extent of coverage afforded under SDPAA was zero. Rather, at the time of Cromwell's injury, City, by participation in the SDPAA, waived sovereign immunity and consented to be sued in the same manner that any other party may be sued, to the extent of the policy limits afforded by the SDPAA coverage agreement.

[¶ 23.] This Court still "adhere[s] to the opinion that if there is to be a departure from the rule of governmental immunity it should result from legislative action." *High-Grade Oil Co.*, 295 N.W.2d at 738 (quoting *Conway v. Humbert*, 82 S.D. 317, 324-25, 145 N.W.2d 524, 529 (1966)). However, in deciding this case we are not departing from the rule of governmental immunity; we are merely deciding when immunity, or the waiver thereof, occurs. Here, sovereign immunity was waived at the time of the accident, August 1, 1997.

### Reclaiming Sovereign Immunity After Waiver

[¶ 24.] Article XI of the Intergovernmental Contract for the South Dakota Public Assurance Alliance allows members to withdraw from the SDPAA and to recover a percentage of the cumulative reserve fund contributions made to the SDPAA. Because City participated more than six years, it was entitled to withdraw 100% of these contributions.

[¶ 25.] More than a year after the date of the accident, City terminated its membership in the SDPAA and withdrew its cumulative reserve fund contributions. Under the terms of the SDPAA contract, all unpaid claims which existed at the time City withdrew as a member of SDPAA, including Cromwell's claim, became the sole responsibility of City. Can City reclaim sovereign immunity by withdrawing from SDPAA thereby making Cromwell's claim one for which City no longer has coverage? We conclude that once City waived sovereign immunity by operation of SDCL 21–32A–1, City could not reclaim it by voluntarily surrendering its coverage.

### 1. Cromwell did not consent to withdraw the waiver

[¶ 26.] The law regarding the reclaiming of waivers is well settled.

One who intentionally relinquishes a known right cannot, without consent of his adversary, reclaim it, for it is well settled that a waiver once made is irrevocable, even in the absence of consideration, or of any change in position of a party in whose favor the waiver operates. And once a right is waived the waiver cannot be withdrawn without the consent of the other party, even if subsequent events prove the right waived to have been more valuable than was anticipated.

*Bared and Co., Inc. v. Specialty Maintenance and Constr., Inc.*, 610 So.2d 1, 3 (Fla.Dist.Ct.App.1992) (citing 28 AmJur2d *Estoppel and Waiver* § 156 (1966)); *see Fox v. Comm'r of Internal Revenue*, 874 F.2d 560, 565 (8thCir.1989); *Lopez v. New*

*Mexico Bd. of Medical Exam'rs,* 107 N.M. 145, 754 P.2d 522, 526 (1988) (Stowers, J., dissenting); *Engstrom v. Farmers & Bankers Life Ins. Co.,* 230 Minn. 308, 41 N.W.2d 422, 424 (1950). City voluntarily joined SDPAA and thereby waived sovereign immunity with regard to Cromwell's claim. In doing this, City consented to Cromwell suing it as if it were any other party. Cromwell acquired a right to sue City and this right cannot be set aside except by Cromwell's consent. Since he has never consented, City cannot reassert sovereign immunity.

## 2. The open courts provision precludes withdrawing the waiver

[¶ 27.] When City voluntarily left SDPAA, it was aware of Cromwell's claim. City had reason to believe the claim may result in damages. City was free to remain in SDPAA or to withdraw. City chose to withdraw and purchase insurance. City could have purchased tail insurance to fill the gap created in its coverage but decided not to do this. Rather, City voluntarily gave up the coverage that it had with respect to Cromwell's claim, withdrew its money from the risk pool, deposited it in a city account and asserted sovereign immunity on the basis that it no longer had coverage for Cromwell's claim.

[¶ 28.] Most recently in *Vilhauer v. Horsemen's Sports, Inc.,* 1999 SD 93, 598 N.W.2d 525, we examined the open courts provision of the South Dakota Constitution, Article VI, Section 20. This provision provides that "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

[¶ 29.] This Court has concluded the proper scope of Article VI, Section 20 to be:

Given the above nature of the understanding of the drafters of the constitutional provisions and its contemporary judicial interpretations, it is clear that these provisions in South Dakota and surrounding states were meant to allow unhindered access to the courthouse by a person who had a valid cause of action based on existing statute or the common law, timely and properly brought, who then would be allowed to present their case to a human fact finder. In other words under those conditions, a litigant was guaranteed its day in court.... In *Green [v. Siegel,* 1996 SD 146, 557 N.W.2d 396], we analyzed our case law from *McClain [v. Williams,* 10 S.D. 332, 73 N.W. 72] in 1897 up to *Knowles [In re Certification,* 1996 SD 10, 544 N.W.2d 183] in 1996 and found no basis for a claim that Art. VI, § 20 could by itself become a sword to create a cause of action or become a shield to prohibit statutorily recognized barriers to recovery such as a statute of limitations.

*Vilhauer,* 1999 SD 93, ¶ 17, 598 N.W.2d at 529 (quoting *Wegleitner v. Sattler,* 1998 SD 88, ¶ 33, 582 N.W.2d 688, 698).

[¶ 30.] It is clear that the open courts provision does not defeat valid statutorily recognized barriers to recovery, including claims of sovereign immunity. But we also note that once sovereign immunity has been waived, SDCL 21–32A–1 provides: "the public entity shall be deemed ... to have consented to suit in the same manner that any other party may be sued."

[¶ 31.] Once this consent is given, and absent a valid statutorily recognized barrier to recovery, a public entity is in no better position than any other defendant to defeat a plaintiff's constitutional right to have his day in court. Does a statutorily recognized barrier to recovery exist here? City has not demonstrated any exist. Waiver of immunity and consent to be sued occurs by operation of statute. We find no similar statute which allows a pub-

lic entity to reassert sovereign immunity for a claim once it has been waived by operation of law.

[¶ 32.] In summary, City waived its sovereign immunity by participation in the SDPAA to the extent of coverage afforded. Under the facts before us, City can not reassert sovereign immunity once it is waived. Kelly Cromwell, Christopher's guardian, brought this case timely and properly and is entitled to have his day in court. There remain genuine issues of material fact including the question of whether Officer Lang's actions were negligent. "It does not contemplate that the court shall decide such issue of fact, but shall determine only whether one exists." *Piner v. Jensen*, 519 N.W.2d 337, 340 (S.D. 1994) (quoting *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 211, 157 N.W.2d 19, 21 (1968)). The denial of summary judgment is affirmed.

[¶ 33.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 34.] LOVRIEN, Circuit Judge, for KONENKAMP, Justice, disqualified.