#26589-aff in pt, rev in pt & rem-JKK
**2014 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AREYMAN E. GABRIEL,                                           Plaintiff and Appellant,

v.

TIM J. BAUMAN, CHESTER RURAL
FIRE PROTECTION DISTRICT,
and CHESTER FIRE DEPARTMENT,          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TIM D. TUCKER
Judge

\* \* \* \*

PETER J. BENDORF
Sioux Falls, South Dakota
        and
GARY W. SCHUMACHER of
Wilkinson & Wilkinson
De Smet, South Dakota                              Attorneys for plaintiff
                                                                      and appellant.


LISA M. PROSTROLLO
MICHAEL L. LUCE of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota                          Attorneys for defendant
                                                                      and appellee Tim J. Bauman.


MICHAEL J. SCHAFFER
PAUL H. LINDE of
Schaffer Law Office, Prof., LLC
Sioux Falls, South Dakota                          Attorneys for defendants and
                                                                      appellees Chester Rural Fire
                                                                      Protection District & Chester
                                                                      Fire Department.

\* \* \* \*

ARGUED ON OCTOBER 2, 2013
OPINION FILED **05/21/14**

#26589

KONENKAMP, Justice

[¶1.]     Responding to an emergency, a volunteer firefighter speeding on his way to the fire station struck a vehicle crossing an intersection, injuring the plaintiff and his passenger. In the suit against the firefighter and his local fire district, plaintiff alleged that the firefighter's conduct was willful, wanton, and reckless and that the fire department negligently trained the firefighter and inadequately equipped the firefighter's vehicle. The circuit court dismissed the suit on summary judgment, ruling as a matter of law that there was insufficient evidence the firefighter and fire district acted willfully, wantonly, or recklessly under SDCL 20-9-4.1.

## Background

[¶2.]     Tim Bauman is a volunteer firefighter for the Chester Fire Department in the Chester Rural Fire Protection District. On the 4th of July in 2007, Bauman and his wife, Cheryl, were at a celebration in Wentworth, South Dakota. Cheryl is a volunteer first responder and an EMT. While at the celebration, Bauman received a page from Chester Fire directing him to respond to a fire. They left the celebration in Bauman's personal pickup. He activated his hazard lights and sped toward the fire hall. When Bauman was traveling south on Lake County Road 15, he came over a hill and saw a north-bound vehicle positioned to make a left turn where the road intersected with Horizon Heights Road. Cheryl also saw the vehicle and said, "Oh, no, don't go, don't go," and then, "Oh, thank God, they're not going to go." But the driver, Areyman Gabriel, then proceeded into the intersection. Bauman later explained that although he slowed his vehicle near the

-1-

intersection, at which he had the right of way, Gabriel's north-bound vehicle turned directly in front of him. Bauman slammed on his brakes, but could not avoid the collision. Both Gabriel and his passenger, Mandi Gronseth, were injured.

[¶3.]        Gronseth brought suit against Bauman and Chester Fire in the United States District Court for the District of South Dakota. She alleged that Bauman was negligent, which negligence proximately caused her injuries. She further claimed that Chester Fire was vicariously liable for Bauman's negligence under the doctrine of respondeat superior. Gronseth later dismissed her claim against Bauman. Chester Fire moved for summary judgment asserting that Bauman was immune from liability under SDCL 20-9-4.1, which immunity extended to Chester Fire. The statute, known as the "Good Samaritan statute," provided at the time:

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shall extend to the operation of any motor vehicle in connection with any such care or services.
>
> Nothing in this section grants any such relief to any person causing any damage by his willful, wanton or reckless act of commission or omission.

*Id.*

[¶4.]        Before ruling on Chester Fire's motion for summary judgment, the federal district court recognized that this Court had not yet interpreted SDCL 20-9-4.1. Therefore, the district court certified the following question to the South Dakota Supreme Court:

> The Defendant driver was driving his own vehicle to the fire hall from which the firemen would then drive an emergency vehicle to the scene of the fire. Is the driving to the fire hall "any emergency care or services during an emergency. . . ." so that SDCL 20-9-4.1 would preclude liability to Plaintiff passenger unless Plaintiff showed the causing of "any damage by [Defendant's] willful, wanton or reckless act of commission or omission"?

*In re Certification of a Question of Law*, 2010 S.D. 16, ¶ 6, 779 N.W.2d 158, 161

(alteration in original). We answered:

> [T]he act of this volunteer fire fighter driving to the fire hall in a personal vehicle in response to an emergency fire call is included within the language "any emergency care and services," so that SDCL 20-9-4.1 would preclude liability unless Gronseth shows that Bauman's conduct was "willful, wanton or reckless[.]"

*Id.* ¶ 16.

[¶5.]        While Gronseth's federal suit was pending, Gabriel brought suit in state court against Bauman and Chester Fire. He, like Gronseth, alleged that Bauman was negligent and Chester Fire was vicariously liable for Bauman's negligence. Gabriel further alleged that Chester Fire negligently trained Bauman and failed to equip his vehicle appropriately. After this Court's decision in *Certification of a Question of Law*, 2010 S.D. 16, 779 N.W.2d 158, Gabriel amended his complaint to allege that Bauman's conduct was willful, wanton, or reckless. He then reasserted that Chester Fire was vicariously liable for Bauman's negligence and that Chester Fire negligently trained Bauman and inadequately equipped Bauman's vehicle, which conduct proximately caused injury to Gabriel.

[¶6.]        Bauman and Chester Fire moved for summary judgment on the ground that Bauman's conduct was not willful, wanton, or reckless as a matter of law. During the hearing, Bauman and Chester Fire directed the circuit court to cases

interpreting the phrase "willful and wanton misconduct" from our long-repealed guest statute. *See, e.g.*, *Melby v. Anderson*, 64 S.D. 249, 266 N.W. 135 (1936) (citing our former guest statute, which has been repealed by 1978 S.D. Sess. Laws ch. 240, § 1). Relying on these cases, Bauman and Chester Fire insisted that Gabriel must prove that Bauman consciously realized that by *speeding* in response to an emergency he would in all probability collide with Gabriel's vehicle. Chester Fire further asserted that SDCL 20-9-4.1 extended immunity to Chester Fire against Gabriel's negligent training and equipment claims.

[¶7.]        At the conclusion of the hearing, the circuit court orally granted Bauman and Chester Fire summary judgment. It ruled that "[t]here was nothing beyond the speed of Mr. Bauman that was a factor in this accident from his conduct[,]" and based on the law, "speed alone is insufficient." The court further ruled that "the training and equipment issue[s]" with Chester Fire "were not willful, wanton, or reckless" as a matter of law.

[¶8.]        In this appeal, Gabriel asserts that the circuit court erred when it granted summary judgment to Bauman because (1) the cases interpreting the repealed guest statute are not controlling, (2) speed alone may constitute willful, wanton, or reckless conduct, and (3) there are additional circumstances beyond Bauman's speed to support a finding that Bauman acted willfully, wantonly, or recklessly. Gabriel also asserts that the court erred when it granted summary judgment to Chester Fire because Chester Fire's administrative decisions related to

training and equipment do not meet the "during an emergency" requirement of SDCL 20-9-4.1.[1]

## Analysis and Decision

[¶9.] Gabriel maintains that the circuit court erroneously relied on South Dakota's repealed guest statute to rule as a matter of law that Bauman did not act willfully, wantonly, or recklessly. *See* SDCL 32-34-1 (repealed by 1978 S.D. Sess. Laws ch. 240, § 1). Under that statute, a passenger in a vehicle could not recover damages from the vehicle owner or operator for negligence unless there was "willful and wanton misconduct of the owner or operator" and that misconduct contributed to the guest's injury. *Id.* Emphasizing the absence of the word "reckless" and highlighting that the guest statute used the conjunctive "and," Gabriel argues that "willful and wanton misconduct" cannot invoke the same statutory standard as a "willful, wanton, or reckless act of commission or omission[.]" Moreover, he argues that there is no support for the court's declaration that speed alone can never rise to the level of willful, wanton, or reckless conduct. Finally, Gabriel contends that he presented sufficient evidence in addition to Bauman's speed to establish that there

---

1. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We view the evidence in a light most favorable to the nonmoving party. *Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc.*, 511 N.W.2d 567, 569 (S.D. 1994) (citation omitted). "Statutory interpretation is a question of law reviewed de novo." *In re B.Y. Dev., Inc.*, 2010 S.D. 57, ¶ 7, 785 N.W.2d 296, 299 (citation omitted).

is an issue of material fact in dispute on whether Bauman's conduct was willful, wanton, or reckless.

[¶10.] In granting Bauman and Chester Fire summary judgment, the circuit court did not identify what standard it used under SDCL 20-9-4.1 or what language it found persuasive from our cases interpreting the repealed guest statute. Nonetheless, at the close of the hearing, the court ruled:

> The court does find as a matter of law that Mr. Bauman's conduct was not willful, wanton, or reckless as defined by statute. That there's not a material fact in issue relating to that decision.
>
> The court finds that under the cases previously determined by the Supreme Court, speed alone is insufficient. There was nothing beyond the speed of Mr. Bauman that was a factor in this accident from his conduct.

Bauman and Chester Fire assert that although the guest statute has been repealed, this "Court's directives regarding the meaning of willful, wanton, or reckless misconduct remain authoritative[.]"

[¶11.] We have not before interpreted what is meant by the language "willful, wanton, or reckless act of commission or omission" under SDCL 20-9-4.1. But we have defined "willful and wanton misconduct" in the context of our repealed guest statute, *see Melby,* 64 S.D. 249, 266 N.W. at 137 (adopting the definition), "willful misconduct" in the context of our workers' compensation statutes, *see Holscher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 48, 713 N.W.2d 555, 567-68, "willful and wanton misconduct" in the context of certain criminal statutes, *see State v. Seidschlaw*, 304 N.W.2d 102, 105-06 (S.D. 1981), willful, wanton, or malicious in the context of punitive damages, *see Berry v. Risdall*, 1998 S.D. 18, ¶ 33, 576 N.W.2d 1,

9, and "reckless" in the context of release agreements, *see Holzer v. Dakota Speedway, Inc.*, 2000 S.D. 65, ¶ 17, 610 N.W.2d 787, 793. In these cases, we have consistently declared that willful, wanton, and reckless conduct "partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong." *Melby*, 64 S.D. 249, 266 N.W. at 137; *see Holscher*, 2006 S.D. 35, ¶ 48 n.2, 713 N.W.2d at 568 n.2; *Berry,* 1998 S.D. 18, ¶ 35, 576 N.W.2d at 9. "'Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a probable, as distinguished from a *possible* (ordinary negligence), result of such conduct.'" *Holzer,* 2000 S.D. 65, ¶ 17, 610 N.W.2d at 793 (quoting *Lee v. Beauchene*, 337 N.W.2d 827, 828 (S.D. 1983)); *see Melby*, 64 S.D. 249, 266 N.W. at 137. We have also said that a defendant must have "an affirmatively *reckless* state of mind." *Allen v. McLain*, 74 S.D. 646, 649, 58 N.W.2d 232, 234 (1953) (emphasis added); *Espeland v. Green*, 74 S.D. 484, 489, 54 N.W.2d 465, 467 (1952).

[¶12.]    Gabriel does not challenge these definitions. Rather, he contends that the Legislature meant something different in SDCL 20-9-4.1 by using the word "reckless" and the disjunctive "or." But the prevailing view among courts defining these terms is that "willful," "wanton," and "reckless" most commonly mean the same thing.[2] In essence, most authorities recognize that all three terms signify an

---

2.    *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 34, at 212-14 (5th ed. 1984); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208-09, 167 L. Ed. 2d 1045 (2007) (Fair Credit Reporting Act); *Catheline v. Seaboard Coast Line R.R. Co.*, 348 F. Supp. 43, 47-48 (M.D. Fla. 1972); *Martin v. Brady*, 802 A.2d 814, 819 (Conn. 2002); *Elliot v. City of Waterbury*, 715 A.2d 27, 42 (Conn. 1998); *Dubay v. Irish*, 542 A.2d 711, 719
(continued . . .)

actor's mental state and look to whether the actor intended to do an act that was of an unreasonable character, in disregard of a known or obvious risk, which risk was so great as to make it highly probable that harm would result. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 34 (5th ed. 1984).

[¶13.] Thus, the circuit court did not err when it used this Court's definition of "willful and wanton misconduct" from our repealed guest statute to gauge whether Bauman's conduct was willful, wanton, or reckless under SDCL 20-9-4.1. Yet we question the circuit court's ruling that speed alone would not be sufficient to rise to the level of willful, wanton, or reckless conduct. We might conceive of instances where a driver's speed alone would become willful, wanton, or reckless under SDCL 20-9-4.1.

[¶14.] Regardless, Gabriel is not claiming that Bauman's speed alone constituted willful, wanton, or reckless conduct. He contends that additional facts combined with speed create a jury question sufficient to survive summary judgment. Specifically, Gabriel points to the fact that (1) Bauman was trained and instructed by Chester Fire to obey the speed limits and other rules of the road, (2)

---

(. . . continued)

(Conn. 1988) (declining to draw "definitional distinctions" between the terms); *Thompson v. Bohlken*, 312 N.W.2d 501, 504-05 (Iowa 1981); *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999); *Dotzler v. Tuttle*, 449 N.W.2d 774, 781 (Neb. 1990) (guest statute); *contra Sandler v. Commonwealth*, 644 N.E.2d 641, 643-44 (Mass. 1995) (defining each word separately). Indeed, the Restatement (Second) of Torts § 500 (2013) recognized that the words "willful," "wanton," and "reckless" have been used singularly or in combination to describe characteristics of conduct. *See also* 57A Am. Jur. 2d Negligence § 241 *Generally* (2014); 65 C.J.S. Negligence § 100 (2014).

Chester Fire Chief, Steve Heyn, testified that Chester Fire chose not to equip personal vehicles with emergency lights because of a concern that the firefighters would drive "like cowboys," (3) the collision occurred on the 4th of July, which Bauman knew would cause an increase in traffic, (4) Bauman saw Gabriel's vehicle at least 887 feet before the collision and heard Cheryl say, "Oh no, don't go," and (5) Bauman did not attempt to apply the breaks until 96 feet before the collision.

[¶15.]    In reviewing whether the court erred in granting summary judgment, we ask not only whether there is a conflict in the evidence, but also whether the undisputed facts are such that reasonable minds might differ in interpreting them in arriving at different conclusions on whether the defendant was willful, wanton, or reckless. Whether one acts willfully, wantonly, or recklessly is, like negligence, normally a jury question. *See State v. Tammi*, 520 N.W.2d 619, 622 (S.D. 1994); *Campbell v. Massucci*, 944 N.E.2d 245, 251 (Ohio Ct. App. 2010).

[¶16.]    Because willfulness, wantonness, or recklessness "is almost never admitted, and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied." W. Page Keeton et al., *Prosser and Keeton Handbook on the Law of Torts* § 34, at 212-14. The conduct must be more than mere mistake, inadvertence, or inattention. There need not be an affirmative wish to injure another, but, instead, a willingness to injure another. "[A] defendant's reckless state of mind may be inferred from conduct and actions so patently dangerous that a reasonable person under the circumstances would know, or should know, that his conduct will in all probability prove disastrous[.]" *Wittmeier v. Post*, 78 S.D. 520, 526, 105 N.W.2d 65, 68 (1960). On the other hand,

this Court warned long ago that if we draw the line of willful, wanton, or reckless conduct too near to that constituting negligent conduct, we risk "opening a door leading to impossible confusion and eventual disregard of the legislative intent . . . to give relief from liability for negligence." *Espeland,* 74 S.D. at 490-91, 54 N.W.2d at 468.

[¶17.] Under the undisputed facts, this case is controlled by *Gunderson v. Sopiwnik*. In *Gunderson*, a guest statute case, this Court observed that a defendant's driving, nearly identical to Bauman's, failed to demonstrate a conscious realization that an accident was probable rather than possible. *See* 75 S.D. 402, 408, 66 N.W.2d 510, 513 (1954). We quote the Court:

> Essential to such conduct is the conscious realization by defendant that his acts [would] in all probability (as distinguished from possibly) produce the precise result which it did produce. We believe the facts and inferences to be drawn therefrom fail to show any such realization by defendant. *True, defendant was driving too fast as he approached and entered this intersection, but there is nothing upon which to base a finding that he consciously realized that the driver of the [other] car would in all probability as distinguished from possibly turn across his path at a point where it would be impossible for defendant to stop before a collision occurred.*

*Id.* (emphasis added).

[¶18.] Taken in a light most favorable to Gabriel, the facts of this case show that Bauman was speeding to the fire station with his hazard lights engaged. Bauman saw that Gabriel's vehicle intended to turn, but Bauman had the right of way and he did not think Gabriel's vehicle was going to turn in front of him. Despite an unobstructed view of Bauman's oncoming vehicle for approximately 887 feet, Gabriel turned in front of Bauman. Bauman attempted to avoid the accident, but was unable to stop in time.

[¶19.] Reasonable persons may understand that they should not exceed the speed limit and that by exceeding the speed limit, they are undertaking a risk of causing an accident. Under our case law, however, reasonable persons under the same or similar circumstances present in this case would not have consciously realized that speeding would — in all probability — result in the accident that occurred. Nothing in the record can support a jury finding that Bauman consciously realized, before it was too late to avoid the collision, that Gabriel would in all probability turn in front of him. *See id.* at 408, 66 N.W.2d at 513. We affirm summary judgment for Bauman.

[¶20.] On the other hand, the circuit court erred when it granted summary judgment to Chester Fire on Gabriel's negligent training and equipment claims based on the immunity in SDCL 20-9-4.1. Although Chester Fire contends that the immunity in SDCL 20-9-4.1 extends to Gabriel's direct negligence claim, because the claim arises out of Bauman's rendering of emergency services, SDCL 20-9-4.1 does not protect the acts of a fire department or fire district. The statute provides immunity to a "peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person[.]" *Id.* Unlike the cases cited by Chester Fire, our statute does not specifically include a fire department or district or define "person" to include a fire district or fire department. *Compare* SDCL 20-9-4.1 *with Cubit v. Mahaska Cnty.,* 677 N.W.2d 777, 782 (Iowa 2004) (statute applies to municipality); *District of Columbia v. Walker*, 689 A.2d 40, 49 (D.C. 1997) (statute includes district); *Stevenson v. Capital Fire Mut. Aid Sys., Inc.*, 661 A.2d 86,

87 (Vt. 1995) (specifically relates to municipality). Chester Fire is not immune under SDCL 20-9-4.1.[3]

[¶21.] Chester Fire also asserts that it is protected from liability by sovereign immunity. But Chester Fire did not plead or raise sovereign immunity as an affirmative defense in its answer to Gabriel's complaint or amended complaint. Immunity from liability for damages under SDCL 21-32A-3 must be timely asserted and "[m]ere conclusory allegations are not substitutes for specific facts." *See Olesen v. Town of Hurley*, 2004 S.D. 136, ¶ 12, 691 N.W.2d 324, 328. The dissent dismisses Chester Fire's failure to specifically plead the affirmative defense because Chester Fire pleaded that it was "immune" generally and made one statement during its argument at the November 2012 summary judgment hearing that Chester Fire is a public body, Bauman is a public employee, and discretionary acts are exempt and immune. The dissent further contends that Chester Fire is immune from suit unless and until Gabriel proves that Chester Fire waived its immunity under SDCL 21-32A-3.

[¶22.] Chester Fire is not immune from suit in the same way the State enjoys sovereign immunity protection. "We must remind ourselves (and the Legislature) that the state's sovereign immunity is the state's sovereign immunity and nothing more. It belongs to the state and to no one else." *Aune v. B-Y Water Dist.*, 464

---

3. That is not to say, however, that Chester Fire is not protected by SDCL 20-9-4.1 against Gabriel's claim that Chester Fire is vicariously liable for Bauman's negligence. That claim arises out of Bauman's rendering in good faith emergency care. If Bauman is not liable, Chester Fire is not vicariously liable.

N.W.2d 1, 5 (S.D. 1990); *see Cromwell v. Rapid City Police Dep't*, 2001 S.D. 100, ¶ 13, 632 N.W.2d 20, 24. Rather, the South Dakota Legislature "extended the reach of sovereign immunity to all public entities of this state," by adopting SDCL 21-32A-3. *Cromwell*, 2001 S.D. 100, ¶ 13, 632 N.W.2d at 24. In doing so, the Legislature specifically imposed the burden on a public entity to invoke its immunity as an affirmative defense. *See, e.g., Elkjer v. City of Rapid City* , 2005 S.D. 45, ¶ 7, 695 N.W.2d 235, 238 (City did not raise the defense, so sovereign immunity not directly in issue)*; Olesen,* 2004 S.D. 136, ¶ 13, 691 N.W.2d at 328 (sovereign immunity waived).

[¶23.] At no point did Chester Fire make a specific request that the circuit court address the issue of sovereign immunity. Raising a legal argument for the first time in an appellate brief limits the opposing party's ability to respond. Had the issue been specifically raised below, "the parties would have had an opportunity to consider whether additional evidence was needed to decide the issue and certainly would have had an opportunity to brief the issue for the trial court's consideration." *Hall v. State*, 2006 S.D. 24, ¶ 12, 712 N.W.2d 22, 27. Moreover, "[w]e will ordinarily decline to review issues not properly presented to the trial court." *Estate of Gaspar v. Vogt, Brown & Merry,* 2003 S.D. 126, ¶ 15, 670 N.W.2d 918, 924 (citation omitted); *see also Steiner v. Cnty. of Marshall*, 1997 S.D. 109, ¶ 27, 568 N.W.2d 627, 633 (citation omitted).

[¶24.] It would be improvident to declare that Chester Fire is protected by sovereign immunity when the record before us is scant and the allegations by Chester Fire are conclusory. The circuit court granted summary judgment solely

under SDCL 20-9-4.1. If we, like the dissent, were to make inferences from Chester Fire's statements, we could just as easily rule that Chester Fire has insurance and, therefore, has waived sovereign immunity under SDCL 21-32A-3. Chester Fire alluded to the existence of insurance during a partial summary judgment hearing in August 2012, when it discussed sovereign immunity and argued that it did not waive immunity on Gabriel's claim for punitive damages, because there was no insurance coverage for punitive damages. In any event, there is no record evidence either way concerning risk-pool and insurance coverage; therefore, there are genuine issues of material fact on that issue. "Summary judgment is appropriate under SDCL 15-6-56 when the entire record reveals that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. If there are genuine issues of material fact, then summary judgment is improper." *Fisher v. Kahler*, 2002 S.D. 30, ¶ 5, 641 N.W.2d 122, 124-25 (citations omitted). Because Chester Fire did not affirmatively assert its immunity from suit under SDCL 21-32A-3, we decline to decide the sovereign immunity issue.[4]

[¶25.]        Affirmed in part, reversed in part, and remanded.

[¶26.]        ZINTER, SEVERSON and WILBUR, Justices, concur.

[¶27.]        GILBERTSON, Chief Justice, dissents.

---

4.    The dissent argues that we should uphold summary judgment because Gabriel did not raise insurance coverage as a waiver of sovereign immunity. This subject was not broached at the trial court level or in the appellate briefs. Before we rule on such a question, we ought to give the parties a fair opportunity to address it.

GILBERTSON, Chief Justice (dissenting).

[¶28.]     I respectfully dissent. The Court correctly notes that SDCL 20-9-4.1 does not directly protect the acts of a fire department or fire district. However, as the South Dakota Constitution is the "mother law" which provides sovereign immunity[5] protection, resort to SDCL 20-9-4.1 is unnecessary. *See Davis v. State*, 2011 S.D. 51, ¶ 76, 804 N.W.2d 618, 643 (Gilbertson, C.J., concurring in result) (citations omitted). Despite the circuit court's erroneous reliance on SDCL 20-9-4.1, "on appeal this Court will affirm the circuit court's ruling granting a motion for summary judgment if any basis exists to support the ruling." *Stern Oil Co. v. Brown*, 2012 S.D. 56, ¶ 9, 817 N.W.2d 395, 399 (citing *Discover Bank v. Stanley,* 2008 S.D. 111, ¶ 19, 757 N.W.2d 756, 762). In this case, Chester Fire adequately carried its burden of proving that it is entitled to governmental immunity,[6] as

---

5.     Article III, § 27 does not use the word "sovereign" nor does it use the word "immunity." The term relates back to the common law origins of the doctrine where in England the King or Queen was sovereign and immune from suit. *Plumbing Supply Co. v. Bd. of Educ.*, 32 S.D. 270, 142 N.W. 1131, 1132 (1913). Article III, § 27 simply declares it is up to the Legislature to establish "in what manner and in what courts suits may be brought against the state." Neither does Article III, § 27 use the term "governmental immunity."

6.     This Court has often used the terms "sovereign immunity" and "governmental immunity" interchangeably. *See, e.g., Cromwell,* 2001 S.D. 100, ¶ 23, 632 N.W.2d at 26; *Aune,* 464 N.W.2d at 4; *Blue Fox Bar, Inc. v. City of Yankton*, 424 N.W.2d 915, 917-18 (S.D. 1988*); L.R. Foy Constr. Co. v. S.D. State Cement Plant Comm'n*, 399 N.W.2d 340, 346 (S.D. 1987). Some jurisdictions have clearly delineated the difference between the terms. *See, e.g., Vejseli v. Pasha*, 923 A.2d 688, 695-96 (Conn. 2007) (recognizing that sovereign immunity only applies to the state, whereas governmental immunity applies to municipalities); *Shootman v. Dep't of Transp.*, 926 P.2d 1200, 1203 n.2 (Colo. 1996) ("The term 'sovereign immunity' generally refers to the immunity of the state or federal government whereas the term 'governmental immunity' refers to the immunity of all levels of government.")

(continued . . .)

expressed by our Constitution[7] and our case law and recognized by SDCL 21-32A-3.

[¶29.]    The common-law doctrine of sovereign immunity was incorporated into Article III, § 27 of the South Dakota Constitution. "Sovereign immunity 'prevents the governing acts of the state, its agencies, other public entities, and their employees from attack in court without the state's consent.'" *Dan Nelson, Auto., Inc. v. Viken*, 2005 S.D. 109, ¶ 27, 706 N.W.2d 239, 249 (quoting *Wulf v. Senst,* 2003 S.D. 105, ¶ 20, 669 N.W.2d 135, 142). "The legislature within constitutional limitations unquestionably has control over the liability to which the state and its governmental subdivisions and agencies may be subjected for tort." *Conway v. Humbert*, 82 S.D. 317, 322, 145 N.W.2d 524, 527 (1966). *See also Bickner v. Raymond Twp.*, 2008 S.D. 27, ¶ 10, 747 N.W.2d 668, 671 ("Sovereign immunity is the right of public entities to be free from liability for tort claims unless waived by legislative enactment.") (citation omitted). This Court has long held "that if there is to be a departure from the rule of governmental immunity it should result from legislative action." *Cromwell*, 2001 S.D. 100, ¶ 23, 632 N.W.2d at 26 (quoting *High-*

---

(. . . continued)

(citation omitted); *Ross v. Consumers Power Co.,* 363 N.W.2d 641, 649 (Mich. 1984) ("Although the concepts of 'sovereign immunity' and 'governmental immunity' are related, they have distinct origins and histories[.]").

7.    A debate ensued in the Constitutional Convention of 1885 concerning the adoption of this provision into the Constitution. It was argued the provision was unnecessary as the Legislature had the inherent power to determine such an issue as suits against the state. The provision adopted by this Convention is still the text of the South Dakota Constitution today. "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state." S.D. Const. art. III, § 27. *See* 1 South Dakota Constitutional Debates, 142, 234-35 (Huronite 1907).

*Grade Oil Co. v. Sommer*, 295 N.W.2d 736, 738 (S.D. 1980)). Moreover, any abrogation must be express. *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 33, 827 N.W.2d 55, 67 (citation omitted).

[¶30.] In *Conway v. Humbert*, this Court recognized that "[t]he power to organize a fire department for prevention of injury and damage by fire is clearly governmental and, in the absence of statutory provision to the contrary, a municipality will not ordinarily be liable for the negligent acts of firemen in the performance of their duties." 82 S.D. at 321, 145 N.W.2d at 527 (citations omitted). This immunity did not stem from statutory language whereby the Legislature explicitly stated that municipalities were cloaked in immunity from liability. Rather, municipalities were cloaked in sovereign immunity, because "in the performance of a governmental function a municipal corporation acts as agent of the state and partakes of its sovereignty with respect to immunity." *Id.*, 145 N.W.2d at 526 (citation omitted). The Legislature simply categorized towns as "bodies corporate" and authorized them to carry out governmental functions. *See generally* Territory of Dakota Laws of 1872-73, ch. 51 (establishing towns and townships). The approach taken by this Court of looking at the function of the entity was finally memorialized in part in 1986, when the Legislature defined a public entity as "the State of South Dakota, all of its branches and agencies, boards and commissions[, and] all public entities established by law exercising any part of the sovereign power of the state . . . and all other legal entities that public entities are authorized

by law to establish." SDCL 3-21-1(2). The same year, the Legislature statutorily recognized that such entities were immune from liability unless immunity was waived by participation in a risk sharing pool or insurance. SDCL 21-32A-3.[8] These acts of the Legislature finally recognized in statute what this Court had long acknowledged from common law: that immunity from suit extended to all public entities performing a governmental function. *See Conway,* 82 S.D. at 322, 145 N.W.2d at 527 (acknowledging that abrogating "the common law rule of governmental immunity would apply to all governmental entities including counties, townships, school districts and the like"); *see also Plumbing Supply Co.*, 32 S.D. 270, 142 N.W. at 1132 (recognizing that counties, civil townships, and school districts "are the agents of the state for the purpose of carrying into effect the functions of government, *and as such* are not liable to be sued civilly for damages caused by neglect to perform such duties" (emphasis added)).

[¶31.] The Court declines to address the issue of sovereign immunity, stating that Chester Fire's assertion of the defense was a "mere conclusory allegation," and should therefore fail. I do not agree. The record reflects that Chester Fire asserted it was immune in its answer, offered tangible evidence of its status as a public entity as recognized by the State, and argued the applicable rules of law qualifying it for governmental immunity from liability. It continues to persuasively argue these rules of law on appeal to this Court.

---

8.   In *Brown v. Egan Consol. Sch. Dist. No. 50–2,* we opined that for waiver purposes, the definition of "public entities" under SDCL 3-21-1 applies to "public entities" as used in SDCL chapter 21-32A. 449 N.W.2d 259, 262 (S.D. 1989).

[¶32.]    In its answers to Gabriel's complaint and amended complaint, Chester Fire stated, "These Defendants allege that they are entitled to immunity for any claims asserted by the Plaintiff." The answer was not qualified by limitation. Chester fire supported this claim to defense with factual evidence of its status as a public entity. In an affidavit supporting Chester Fire's opposition to Gabriel's motion for summary judgment, counsel submitted Chester Rural Fire Protection District's registration with the State as a rural fire protection district and a copy of SDCL 34-31A-16, which designates properly organized rural fire protection districts as "bod[ies] politic and corporate."[9] This affidavit was later incorporated into Chester Fire's motion for summary judgment. In a separately asserted argument Chester Fire denied liability under SDCL 20-9-4.1, because Bauman's conduct was not willful, wanton, or reckless.

[¶33.]    Although Chester Fire did not use the term "sovereign immunity," the record reflects that Chester Fire argued the applicable rule of law in this case using the terms "immunity" and "government immunity." *See supra* n.6. Specifically, at the summary judgment hearing Chester fire argued:

> In other words, if the statute or regulation has the word may in it, it's discretionary with the entity or the police or the fire chief in this case to provide those, under principals of government immunity. And these are public entities, and [Bauman] is a public employee, because these fire districts and fire

9.    SDCL 34-31A-16 establishes properly organized rural fire protection districts as "bod[ies] politic and corporate." This language is similar to language used by the 1872 Territorial Legislature, when towns were first recognized in statute. Territory of Dakota Laws of 1872-73, ch. 51, § 8 provides that "Each town is a body corporate, and has capacity: (1) "[t]o sue and be sued[,]" (2) "purchase and hold lands[,]" (3) make contracts, and (4) make orders for the disposition, regulation, or use of its property.

> departments are considered a corporate body politics under the statute. Discretionary functions are exempt and are immune. [Gabriel has] not resisted that in any fashion in any of [his] reply briefs.

[¶34.]     Chester Fire's arguments to the circuit court as to "government immunity" sufficiently reflect the applicable rules of law. Rural fire protection districts are a type of public entity created by the Legislature to carry out a government function.[10] Generally, public entities are immune from liability when carrying out discretionary governmental functions. *See* SDCL 21-32A-3; *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D. 1991) (citing *Gasper v. Freidel,* 450 N.W.2d 226, 230 (S.D. 1990); *Aune*, 464 N.W.2d at 3 (additional citations omitted)). We have recognized that the State cannot extend governmental immunity to proprietary functions, even if carried out by a public entity. *Aune*, 464 N.W.2d at 5; *see also Oien v. City of Sioux Falls,* 393 N.W.2d 286, 290 (S.D. 1986). Public entities are only protected like the State from liability when they are acting like the State in carrying out governmental functions. Chester Fire carried its burden of proving it

---

10.     Our case law indicates that providing fire protection services to the public is a governmental function. *Conway,* 82 S.D. at 321, 145 N.W.2d at 527. In carrying out this function, rural fire protection districts are granted, inter alia, the power to levy taxes, annex territory, develop and carry out a fire protection plan for the district, and establish or contract with a fire department. *See* SDCL 34-31A-17(1) (determine general fire protection program); SDCL 34-31A-22 to 24 (levy and collect taxes); SDCL 34-31A-36 (annex territory). Chester Fire Department would qualify as a legal entity that Chester Rural Fire Protection District is "authorized by law to establish." *See* SDCL 34-31A-17(1),(6) (granting rural fire protection districts the authority to "[t]o determine upon a general fire protection program for the district" and "[t]o organize, establish, equip, maintain, and supervise a fire department or company to serve the district"). Thus both entities are cloaked in the immunity from liability contemplated by case law and enumerated in SDCL 3-21-3.

was a public entity—a registered rural fire protection district authorized by SDCL 34-31A-16—and that it was carrying out the governmental function of fire protection.

[¶35.]      Gabriel's claims against Chester Fire stem from alleged negligence in training and equipping Bauman. However, as argued by Chester Fire, the functions of training and equipping the firefighters are discretionary functions. "In order to find a duty 'ministerial,' [as opposed to discretionary,] we must find a 'governing rule or standard' so clear and specific that it directs the government actor without calling upon the actor to ascertain how and when to implement that rule or standard." *Truman v. Griese*, 2009 S.D. 8, ¶ 22, 762 N.W.2d 75, 81. There is no clear and specific governing rule for the training and equipping of a fire crew by a rural fire protection district. Rather, there is a general grant of authority. *See* SDCL 34-31A-17 (granting fire protection districts the "*general powers . . .* to organize, establish, equip, maintain, and supervise a fire department or company to serve the district" (emphasis added)). This direction given by statute is not so clear and specific that "one could . . . pluck an ordinary citizen off the street and expect they could successfully execute the duties" of training and equipping a fire crew. *See Truman*, 2009 S.D. 8, ¶ 22, 762 N.W.2d at 81 (quoting *Hansen v. S.D. Dep't of Transp.*, 1998 S.D. 109, ¶ 29, 584 N.W.2d 881, 887-88). Thus, Chester Fire was immune from liability in carrying out these duties, because they were discretionary governmental functions performed by a public entity. Gabriel raised no applicable argument to refute this grant of immunity.

[¶36.]     On appeal, Gabriel's only counter to Chester Fire's governmental immunity defense is that Chester Fire failed to carry its "burden of showing that it has not waived sovereign immunity pursuant to SDCL 21-32A-1." This argument inappropriately places upon Chester Fire the burden of raising and refuting an *exception* to the general rule of immunity. We have held that the party raising the affirmative defense of immunity has the burden of proving that it is entitled to immunity. *Masad v. Weber*, 2009 S.D. 80, ¶ 15, 772 N.W.2d 144, 152-153. However, "[t]he party opposing summary judgment must establish the specific facts which show that a genuine and material issue for trial exists." *Wulf*, 2003 S.D. 105, ¶ 18, 669 N.W.2d at 142 (citation omitted).

[¶37.]     In this case, Chester Fire established it was entitled to immunity as a public entity. Chester Fire's governmental immunity did not originate from its lack of insurance, such that Chester Fire must prove lack of insurance to establish its entitlement to immunity. Rather, as SDCL 3-21-1 indicates, the purchase of insurance coverage acts as an exception, waiving the long-recognized immunity from liability to the extent the entity can be shown to have purchased insurance covering the specific harm alleged. *See Patterson Farm, Inc. v. City of Britton*, 22 F. Supp. 2d 1085, 1094 (D.S.D. 1998) (noting that city's immunity was not waived as to pollution claims because insurance policy specifically excluded coverage).

[¶38.]     Governmental immunity can be waived by various means.[11] Nevertheless, as previously noted, any abrogation must be express.[12] Accordingly, once a defendant public entity establishes that it is entitled to immunity, the burden of production should shift to the plaintiff to establish specific facts showing that the defendant has waived immunity, and therefore "a genuine and material issue for trial exists." *See Wulf*, 2003 S.D. 105, ¶ 18, 669 N.W.2d at 142 (citation omitted).[13] In this case, Gabriel as the non-moving party needed to establish the existence of a genuine issue of material fact, i.e., that Chester Fire waived its

---

11.  *See, e.g.*, SDCL 21-32A-3 (waiver by participation in risk sharing pool or purchase of insurance); *Sisney v. Reisch*, 2008 S.D. 72, ¶ 13, 754 N.W.2d 813, 819 (waiver by contract where the governmental entity has the legal authority to do so); S.D. Const. art. III, § 27 (waiver by legislative act).

12.  While analysis of legislative enactments concerning suits against governmental entities generally deals with the issue of abrogation, there is nothing in Article III, § 27 indicating legislative action must always flow in that direction. The Constitution also clearly grants the Legislature the authority to abrogate the abrogation and place the entity in the immune class where it once was subject to suit. *See, e.g.*, SDCL 20-9-45 (immunizing from liability some acts of non-profit fire, ambulance, and search and rescue entities).

13.  We require this type of shifting burden of production when a plaintiff claims an exception to the affirmative defense of statute of limitations lapse. *See Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 9, 752 N.W.2d 658, 663. Other jurisdictions have applied this burden-shifting approach to governmental immunity. *See, e.g., Hendrix v. Bexar Cnty. Hosp. Dist.*, 31 S.W.3d 661, 662 (Tex. App. 2000); *Harris v. Sutton*, 918 N.E.2d 181, 185 (Ohio Ct. App. 2009); *Ex parte Lawley*, 38 So. 3d 41, 47 (Ala. 2009); *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 n.6 (5th Cir. 1993) (citations omitted) (explaining burden shifting in Foreign Sovereign Immunity Act).

immunity by purchasing insurance that covered Gabriel's claim.[14]  Gabriel did not raise the issue of insurance or any other means by which Chester Fire allegedly waived its immunity.  Therefore, I would affirm summary judgment in favor of Chester Fire based on governmental immunity.

---

14.    The only time insurance was mentioned by either party was in the August 13, 2012 motion hearing in the context of Gabriel's punitive damages claim against Chester Fire.  Chester Fire stated:

> But as far as punitive damages in this case, there is—there can't be punitive damages in this case against a public entity, cause under the law of insurance, a public entity, which the Chester Fire Department and Chester Rural Fire Protection District are, there's a waiver of sovereign immunity only to the extent of insurance coverage.  There's no coverage under the *City of Pierre* case for punitive damages.  Therefore, there can't be a waiver, therefore they can't recover them in this.

Chester Fire argued this point as a matter of law—that even if there were insurance, no insurance can cover punitive damages.  Thus Chester Fire could never be liable for punitive damages.  Gabriel dropped the punitive damages claim shortly thereafter.